841 P.2d 1370

Sheryll NATION, personal representative of the Estate of Jeffrey Nation, deceased, and Donna Nation, Plaintiffs–Appellees, Cross Appellants,

v.

Michelle COLLA, State of Arizona, Department of Economic Security, Division of Child Protective Services; and Mesa Crisis Center, Defendants–Appellants, Cross Appellees.

No. 1 CA–CV 89–501.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 26, 1991.

Reconsideration Denied and Opinion Modified July 20, 1992.*

Petition and Cross–Petition for Review Withdrawn Dec. 29, 1992.

* Jacobson, J., would grant the Motion to Reconsider the entire result.

246

Surrano & Massey by Robert J. Hommel, Phoenix, for plaintiffs-appellees, cross appellants.

Grant Woods, Atty. Gen. by Thomas J. Dennis, Asst. Atty. Gen., Phoenix, for defendants-appellants, cross appellees.

## OPINION

CONTRERAS, Judge.

In this appeal we must decide to what extent a caseworker for Child Protective Services (CPS)[1] performing duties relating to the investigation and filing of a child dependency petition is entitled to absolute and/or qualified immunity. Based upon her investigation and the possibility of physical child abuse, Michelle Colla (Colla), the caseworker, caused a dependency petition to be filed in juvenile court concerning James Nation, a two-month old infant. As a result of the filing, custody of the infant

---

1. Child Protective Services is a division of the Department of Economic Security (DES), State of Arizona.

was removed from the child's parents and temporarily placed with CPS. The infant was moved to Mesa Crisis Nursery where he died sixteen days later.

In this ensuing lawsuit which was brought pursuant to 42 U.S.C. § 1983 (§ 1983), the trial court determined that the caseworker, Colla, was not entitled to absolute immunity. The trial court further determined that a balanced reading of the law indicated that qualified immunity was applicable. On appeal we conclude, as a matter of law, that Colla is entitled to absolute immunity in the § 1983 action for all of her conduct as a CPS caseworker in connection with the initiation and pursuit of child dependency proceedings. We further conclude that Colla is entitled to qualified immunity for her actions preceding the filing of the dependency petition.[2]

## FACTS AND PROCEDURAL HISTORY

The facts are relatively undisputed. Jeffrey and Donna Nation, formerly husband and wife,[3] were the natural parents of James, who was born on October 26, 1984. On Monday, December 10, 1984, Donna noticed that James was not moving his right leg in a normal manner. She did not notice any bruising. On Tuesday, December 11, 1984, Donna took James to Dr. Worsham for a consultation on an unrelated condition. Donna forgot to tell Dr. Worsham about James' leg and Dr. Worsham did not notice anything wrong with James' leg during his examination. On Wednesday, December 12, 1984, late in the day, Donna noticed that James' leg was swollen. She showed James' leg to Jeffrey and they agreed to take James to the doctor the next day.

On Thursday, December 13, 1984, Donna took James to the Cigna clinic where he was initially examined by Dr. Van Arsdell. Dr. Van Arsdell suspected a possible septic hip and requested an orthopedic consultation. James was then examined by Dr.

Metzger, an orthopedic surgeon. X-rays taken disclosed that James had a transverse fracture of the right femur. Dr. Metzger informed Donna of James' condition and James was admitted to the hospital for traction and casting. Donna was surprised by the diagnosis and supplied Dr. Metzger with James' medical history and a chronology of the events of the previous weeks. She could not explain the injury. Because there was an unexplained injury, Dr. Metzger informed CPS. A CPS Intake Report was prepared on Thursday, December 13, 1984, and CPS caseworker Colla was assigned to the case on Friday, December 14, 1984.

Colla began her investigation on the morning of Friday, December 14, 1984, by unsuccessfully attempting to contact Dr. Metzger several times by telephone. She then went to the hospital where she observed James. She noted that he was in traction but that there were no visible signs of physical abuse such as bruising. Colla spoke briefly with Donna at the hospital before Donna left to pick up her daughter at school. Donna informed Colla that she intended to return to the hospital immediately after picking up her daughter.

Colla then called Dr. Metzger who informed her that in his opinion James could not have caused the injury to himself. He further informed her that James could be casted the next day and released very soon after, probably within a day or two. Colla asked Dr. Metzger if it would be possible to hold James in the hospital over the weekend until December 17th. Dr. Metzger agreed. Colla then confirmed with the hospital social worker, Gina Harmon, that James would not be released without CPS approval. No temporary custody notices were issued. Colla continued her investigation by further interviewing Donna and members of her family.

December 15 and 16, 1984, were weekend days during which the Nations visited James at the hospital. On the morning of

---

2. We address additional issues raised in the appeal and cross-appeal under appropriate subsequent headings.

3. Jeffrey and Donna Nation were divorced in October of 1987. Jeffrey passed away on February 10, 1989. Sheryll Nation, his widow and personal representative was substituted as appellee/cross-appellant in his place.

Monday, December 17, 1984, Colla resumed her investigation. She called the Nations and then made a visit to their home. Later that morning, Dr. Charlton, a pediatrician who did consulting work for CPS, informed Colla it would take a great deal of force to cause such a break in James' leg. She then called Dr. Metzger who told her he did not think the baby was abused.

On the afternoon of Monday the 17th, Colla consulted Assistant Attorney General Chris Wotruba who informed her that the case looked weak but to continue her investigation. Wotruba told Colla to draft a petition and that she would review it with Paul Matte, another Assistant Attorney General. Colla also reviewed the case with her supervisors who concluded that the petition looked weak and made various suggestions on how to proceed with her investigation. Colla then called Gina Harmon at the hospital to see if James could be kept for one more day. After reviewing the case, Matte also informed Colla that the petition did not look viable.

Jeffrey called Colla to tell her that the hospital would not release James without CPS approval. Colla told him that CPS did not have James in custody but that the hospital agreed to keep James until the investigation was completed. James remained in the hospital overnight. On Tuesday, December 18, 1984, Colla again spoke to Dr. Metzger who told her that it was possible that James had osteogenesis imperfecta, also known as brittle bone disease. He informed her that the disease could not be diagnosed by the use of a test but could only be diagnosed after numerous breaks. Colla called Assistant Attorney General Wotruba and again reviewed the case with her. Wotruba told her there was no basis for filing a dependency petition. Colla then consulted her supervisor who told her there was no choice except to allow James to return home.

Subsequently, Dr. Charlton called Colla and told her that he believed the brittle bone disease diagnosis was speculative and that he believed a dependency petition should be filed so that the court could make that determination. Colla called Assistant Attorney General Eileen Bond, explained the case and relayed the information received from Dr. Charlton. Bond requested that Colla ask Dr. Charlton if James would have cried out upon the fracture of his leg and when he was moved after the fracture. The call was placed and Dr. Charlton answered affirmatively. Colla relayed this information to Bond. On the afternoon of Tuesday, December 18, 1984, the Nations were served with temporary custody notices informing them that James was being placed in the temporary custody of DES because of alleged physical abuse.

A dependency petition signed by a representative of the Attorney General's office was filed with the juvenile court on Wednesday, December 19, 1984. Colla signed the verification affidavit attached to the petition. On that day, James was released from the hospital and was immediately placed in the care of the Mesa Crisis Nursery.

On Friday, December 21, 1984, the juvenile court ordered that James be made a temporary ward of the court and committed to the custody of DES until a hearing could be held. The juvenile court further ordered that a hearing be held on Tuesday, January 8, 1985. The Nations, pursuant to statute, requested an earlier hearing be held within five days but later asked that the hearing be continued since they were unable to obtain counsel. The hearing was rescheduled for the original date of January 8, 1985. In the interim, the Nations regularly visited James at the Mesa Crisis Nursery. On Friday, January 4, 1985, James was found not breathing in his crib at the nursery. He was transported to the hospital where he was later pronounced dead. The coroner stated the cause of death as Sudden Infant Death Syndrome (SIDS). The Nations' expert testified that James could have died from a number of causes, including suffocation, heart disease, sepsis (a blood disease), viremia (a blood disease), botulism, or SIDS.

On November 24, 1986, the Nations filed a complaint against Colla and DES, the CPS division, alleging a violation of § 1983,

negligence, and intentional infliction of emotional distress resulting from the alleged wrongful removal of James and his subsequent death. The Nations also named the Mesa Crisis Nursery as a defendant in the negligence claim. The state moved to dismiss all claims on the basis that the Nations had failed to comply with the Arizona claims notice statute, A.R.S. § 12–821. The Nations responded that the failure to comply with the statute was the result of excusable neglect or their attorney's conduct. The trial court found that the Nations' failure to comply with the statute was not the result of excusable neglect and dismissed the state law tort claims but refused to dismiss the § 1983 claim. The Mesa Crisis Nursery was dismissed by stipulation and the state by order of the trial court.

A motion for summary judgment was filed on behalf of Colla contending that the Nations' constitutional claims were barred by applicable absolute and qualified immunities. This motion was denied as to absolute immunity. The trial court ruled that Colla was only entitled to a qualified "privilege" for all of her activities in her official capacity as a CPS caseworker. The trial court also denied a motion in limine in which Colla asked the court to prohibit evidence on the death of James Nation since there was no expert that could testify to any degree of reasonable medical certainty that Colla caused the death of James Nation. Colla's additional motion in limine to preclude from evidence photographs of James Nation's dead body as irrelevant and highly prejudicial was similarly denied.

The case proceeded to trial with the only theory of recovery being based on § 1983 and the only defendant being Colla. At the end of the presentation of the Nations' case, the trial court directed a verdict in favor of Colla on the issue of liability for James' death. The case was submitted to the jury on the § 1983 claim. The jury returned a verdict of $90,000.00 in favor of the Nations, consisting of $30,000.00 for Jeffrey and $60,000.00 for Donna. Colla timely appealed and the Nations timely cross-appealed.

The issues presented by appellant Colla on appeal are:

1. Whether immunities applicable in a 42 U.S.C. § 1983 action entitle Colla to reversal of the judgment against her and entry of judgment in her favor, or a new trial.

A. Whether Colla, as a CPS caseworker performing discretionary and judicial functions in the dependency case involving James Nation, should be entitled to absolute immunity.

B. Whether the absence of clearly established law in 1984 concerning when a child could or could not be taken into temporary custody entitles Michelle Colla to qualified immunity in taking temporary custody over James Nation.

C. Whether there was any evidence produced at trial upon which the jury could find that Michelle Colla lacked a reasonable good faith belief that her conduct was lawful and acted with knowledge or in reckless disregard of violating a constitutional right.

2. Whether the trial court's failure to exclude at trial the issue of James Nation's death, and highly prejudicial pictures of James Nation's dead body, constitutes reversible error requiring a new trial.

The issues presented by the Nations on cross-appeal are:

1. May the Nations' failure to comply with the one year notice provisions of A.R.S. § 12–821 be excused on grounds of excusable neglect, thereby allowing their tort claims to be resolved on the merits.

2. If the Nations' neglect in complying with the notice provisions of A.R.S. § 12–821 is not excusable, is the absence of excusable neglect because of the conduct of the Nations' attorney.

3. Should the issues of liability and damages, arising from the death of the infant, James Nation, have gone to the jury solely on the grounds that the absence of the infant from parental custody decreased his chances of survival.

DISCUSSION–APPEAL

*Absolute Immunity*

■ The parties agree that the applicability and scope of the immunity of a state official in a § 1983 action is a question of federal law. We concur. *Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481, 488 n. 8 (1980).

42 U.S.C. § 1983 provides:

Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The Nations alleged Colla contravened § 1983 and violated their fourth, fifth, sixth, eighth and fourteenth amendment rights through her conduct in wrongfully removing James from their custody, which ultimately resulted in his death. At trial, the Nations asserted that Colla filed a false and misleading petition calculated to deceive the juvenile court into believing that James' doctors believed that James' fracture was the result of the Nations' physical abuse. The Nations also asserted that Colla ignored and suppressed all exculpatory evidence in their favor and misled the juvenile court, the Attorney General's office and her⁴ CPS supervisors. The Nations also alleged that Colla took James into custody without reasonable grounds and that she acted in bad faith.

Colla moved for summary judgment in the trial court contending that the Nations'

claims were barred since her actions as a CPS caseworker were subject to absolute and qualified immunity. The trial court denied the motion in part, ruling that Colla's actions were subject to a qualified "privilege" i.e., immunity but not absolute immunity. The trial court instructed the jury that Colla was entitled to qualified immunity.

■ We first address the issue of whether, and to what extent, a CPS caseworker is entitled to absolute immunity in a § 1983 action from liability arising out of the performance of duties related to the filing of a child dependency petition. This is a case of first impression in this Court. Colla argues that she is entitled to absolute immunity for her actions and conduct in initiating, obtaining and executing the dependency petition. Colla argues that she is entitled to absolute quasi-prosecutorial immunity because, similar to a prosecutor, a CPS caseworker initiates the dependency process, evaluates the facts and is involved in the dependency process in every step subsequent to the filing of the dependency petition. Colla further argues that the trial court's failure to recognize her entitlement to absolute immunity for these actions led to the admission of evidence, including the dependency petition itself and other related documents, for which liability should have been precluded. The Nations respond that caseworkers enjoy only qualified immunity such as that enjoyed by a police officer. The Nations argue that a caseworker's preparation of a child dependency petition is more analogous to a police officer's preparation of an affidavit in support of an arrest warrant, an activity which receives only qualified immunity.⁴

■ The United States Supreme Court has held that a prosecutor is entitled to absolute immunity from damages under § 1983 when acting within the scope of his or her prosecutorial duty. *Imbler v. Pachtman,* 424 U.S. 409, 424, 96 S.Ct. 984,

---

4. We note that the parties agree that Colla is entitled to absolute immunity for any testimony she may have given during the dependency proceedings. Witnesses, including government witnesses, are absolutely immune from liability for their testimony. *Meyers v. Contra Costa County Dep't of Social Services,* 812 F.2d 1154 (9th Cir. 1987), *cert. denied,* 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987).

992, 47 L.Ed.2d 128, 140 (1976). Prosecutors are therefore immune from civil liability for the initiation and presentation of the state's case. *Id.* at 431, 96 S.Ct. at 995, 47 L.Ed.2d at 144. The Court recognized that this absolute immunity leaves a genuinely wronged defendant without civil redress, but noted that public policy requires that prosecutors exercise independent judgment in carrying out their public duties without the threat of § 1983 lawsuits. *Id.* at 427, 96 S.Ct. at 993, 47 L.Ed.2d at 141. Furthermore, because absolute immunity defeats a civil lawsuit at the onset, a prosecutor is not required to answer in court each time a person charges wrongdoing and, therefore, important attention is not directed away from the prosecutor's duty of enforcing the law. *Id.* at 419 n. 13, 96 S.Ct. at 989 n. 13, 47 L.Ed.2d at 137 n. 13.

The Ninth Circuit Court of Appeals has recently examined, in a series of cases, the scope of immunities afforded to a social worker in the context of child dependency proceedings. In *Meyers v. Contra Costa County Dep't of Social Services*, 812 F.2d 1154 (9th Cir.1987), *cert. denied*, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987), the court held that a social services worker was entitled to absolute immunity for the performance of quasi-prosecutorial functions associated with the initiation and pursuit of child dependency proceedings. The court noted that the social worker's responsibility for bringing dependency proceedings and the need for the exercise of independent judgment in determining whether to initiate such proceedings is not very different from that of a criminal prosecutor. The court further noted that in such situations, a social worker must make quick decisions, often without full information regarding whether to commence investigations and initiate proceedings " ... against parents who may have abused their children." *Id.* at 1157. Accordingly, like a prosecutor, the social worker's independence might be compromised by the threat of a time-consuming and financially devastating civil lawsuit. The court held that social workers are entitled to absolute immunity " ... in performing quasi-prosecutorial functions connected with the initiation

and pursuit of child dependency proceedings." *Id.*

In *Coverdell v. Dep't of Social and Health Services, State of Washington*, 834 F.2d 758, 764–65 (9th Cir.1987), the Ninth Circuit Court of Appeals held that social workers are entitled to absolute immunity from liability arising from the execution of a valid court order. The social worker obtained a court order directing the removal of a child from the mother. The worker then executed the order by removing the child from the hospital shortly after her birth. The court characterized the immunity applicable to the execution of the order as quasi-judicial in nature because the execution of a court order is not an act analogous to one that might be performed by a prosecutor. The court reasoned that the execution of court orders is integral to the functioning of the court and stated that "to permit the CPS social worker to become 'a lightning rod for harassing litigation aimed at judicial orders' " would undermine the effectiveness of child protection proceedings. *Id.* at 765. Lastly, the court noted that parents of children apprehended pursuant to court order are not left without a remedy as they may attack the order directly or by appeal. *Id.*

In *Babcock v. Tyler*, 884 F.2d 497 (9th Cir.1989), *cert. denied*, 493 U.S. 1072, 110 S.Ct. 1118, 107 L.Ed.2d 1025 (1990), the Ninth Circuit Court of Appeals extended the scope of the absolute immunity afforded to social workers to encompass post-adjudication activities which are incident to or in connection with ongoing child dependency proceedings. The court concluded that social workers are entitled to absolute immunity for the supervision and placement of children after the adjudication of the child or children as dependent. *Id.* at 503. The court held that the key inquiry for determining the scope of absolute immunity is whether the function for which immunity is sought is so much an integral part of the judicial process that policy demands that it be covered. *Id.* at 502. Because a social worker's need to exercise independent judgment continues after the filing of the dependency petition, absolute

immunity is afforded to those activities taken incident to or in connection with ongoing child dependency proceedings. *Id.* at 503.

The Ninth Circuit cases are consistent with cases from other Circuit Courts of Appeal. *See Vosburg v. Dep't of Social Services,* 884 F.2d 133 (4th Cir.1989) (social worker who filed a petition for the removal of child from the home was acting in a prosecutorial rather than investigative capacity and therefore was entitled to absolute immunity for any liability arising from the decision to file the petition); *Gardner by Gardner v. Parson,* 874 F.2d 131 (3rd Cir.1989) (guardian *ad litem* absolutely immune from liability arising from prosecuting custody or neglect petitions); *Salyer v. Patrick,* 874 F.2d 374 (6th Cir.1989) (family services worker who filed child abuse petition acting in quasi-judicial role and therefore entitled to absolute immunity from liability from allegations that worker failed to adequately investigate); *but see Spielman v. Hildebrand,* 873 F.2d 1377 (10th Cir.1989) (social workers' removal of child before agency hearing not an integral part of judicial process and therefore social workers entitled to qualified and not absolute immunity); *Hodorowski v. Ray,* 844 F.2d 1210 (5th Cir.1988) (seizure of children without court order prior to the initiation of judicial proceedings a function more like that of a policeman than a prosecutor and therefore absolute immunity not applicable).

■ We find persuasive the policy reasons expressed in the federal court decisions, particularly the Ninth Circuit decisions which afford absolute immunity to social workers involved in the initiation and pursuit of child dependency proceedings. Similar to a prosecutor, a caseworker is responsible for the initiation of dependency petitions and must be allowed to exercise independent judgment without the threat of civil litigation. The caseworker must act quickly, often with incomplete information and in a hostile environment. Failure to afford CPS workers absolute immunity for their quasi-prosecutorial and quasi-judicial actions could result in the caseworkers'

independence being severely compromised by the constant threat of civil litigation.

■ We therefore hold that Colla, in her capacity as a CPS caseworker, is entitled to absolute immunity for her activities relating to the initiation and filing of the dependency petition. *Meyers,* 812 F.2d 1154. Furthermore, Colla is entitled to absolute immunity for her actions in pursuing, obtaining, and executing the temporary custody order over James. *Coverdell,* 834 F.2d 758. Colla is also entitled to absolute immunity for any conduct, which was incident to or in connection with the child dependency proceedings, that occurred after the dependency petition was filed. *Babcock,* 884 F.2d 497. We recognize that there may be cases where the dependency process could be abused. However, the opportunity for abuse is lessened considerably when judicial proceedings have commenced and there is an impartial decisionmaker participating. Accordingly, the Nations' § 1983 claim based on the foregoing activities by Colla is barred.

Because we hold that Colla's absolute immunity attaches with the filing of the dependency petition on December 19, 1984, we must address the scope of immunity applicable to her conduct and activities preceding the attachment of absolute immunity. The activities at issue are those that took place between December 14, 1984, when Colla was first assigned to the case, and December 19, 1984, the date the dependency petition was filed.

### Qualified Immunity

■ Colla argues that her actions that are not subject to absolute immunity are subject to qualified immunity. The Nations agree that while Colla is entitled to qualified immunity, she is not immune from liability since her actions were not objectively reasonable. The Nations argue that their fundamental interest in the custody of their child was clearly established at the time of Colla's actions, as were the grounds upon which Colla was entitled to

interfere with that custody.[5] The Nations argue that Colla interfered with their right to custody of James through her actions in seeking to have Dr. Metzger and Gina Harmon hold James in the hospital while she continued her investigation before the dependency petition was filed or temporary custody papers issued. The Nations further argue that Colla did not comply with the state statutes governing CPS procedures.

■ Under the doctrine of qualified immunity, an executive officer is immune from civil liability in a § 1983 action if the conduct complained of does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Meyers*, 812 F.2d at 1158; *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow*, the United States Supreme Court defined the limits of qualified immunity in objective terms reasoning that the public interest in the deterrence of unlawful conduct is adequately protected by a test that measures the objective reasonableness of an official's conduct. *Id.* at 819, 102 S.Ct. at 2739, 73 L.Ed.2d at 411. It is true that *Harlow* involved a lawsuit against federal and not state officials, but the Court has applied the same qualified immunity rules in lawsuits against state officers under § 1983 as in lawsuits against federal officers being sued under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *see Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (absent congressional direction to the contrary, it is untenable to draw distinction for purposes of immunity law between lawsuits brought against state officers under § 1983 and lawsuits brought against federal officers directly under the constitution). Therefore, the relevant question is whether a reasonable CPS caseworker could have believed that having James held in the hospital with a broken leg for three extra days was lawful in the context of clearly established law and the information that the caseworker possessed at the time. *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir.1989). The plaintiff has the burden of proving that the right which the defendant allegedly violated was clearly established at the time the conduct complained of occurred. *Id.* at 186.

■ The right allegedly violated is not viewed as a general right, but is instead viewed in the context of the circumstances under which the alleged violation took place. *Baker*, 887 F.2d at 186; *cf. Todd v. United States*, 849 F.2d 365 (9th Cir.1988) (whether the particular facts at issue give rise to probable cause). The right allegedly violated must have been clearly established in a particularized sense and the contours of the right must be sufficiently clear so that a reasonable person would know his or her conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987).

■ The Nations assert that Colla violated their constitutional right to the care and custody of James. While it is true that parents have a constitutional right to the care and custody of their children, that right is not absolute. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Myers v. Morris*, 810 F.2d 1437 (8th Cir.1987), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *Caldwell v. LeFaver*, 928 F.2d 331 (9th Cir. 1991). The state may remove a child from the parents' custody if the child is subject to immediate or apparent harm or danger. *Baker*, 887 F.2d at 187–88.

■ The Nations point out that Colla both allegedly and admittedly violated some state statutes and regulations governing CPS investigations. This may be relevant in an action based upon such state statutes or regulations, but a government official being sued under § 1983 does not lose his or her immunity merely because he or she violates state statutes or regula-

---

**5.** In light of our resolution of the issue of absolute immunity, we do not consider the Nations' allegations that the dependency petition contained false and misleading information. Colla is absolutely immune from civil liability arising out of the actual contents of the dependency petition.

tions. *Baker,* 887 F.2d at 189; *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

■ In *Baker,* the court noted that in 1986 there was no binding United States Supreme Court or Ninth Circuit precedent clearly establishing when state officers could or could not take a child into temporary custody. The court noted that post-incident law is usually not examined to determine whether the law at the time the incident took place was then clearly established. The conduct at issue in the present case took place in December of 1984. The relevant inquiry is whether, in light of the law existing in December of 1984, the unlawfulness of Colla's actions was apparent. *Baker,* 887 F.2d 183; *Anderson,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523. It is abundantly clear that there was no binding United States Supreme Court, Ninth Circuit or Arizona precedent in 1984 that clearly established when state officers could or could not take a child into temporary custody.

The plaintiffs in *Baker* argued that the defendants' behavior was so egregious as to fall outside the *Anderson* framework and that such egregious conduct provided a sufficient basis for the denial of qualified immunity. The court assumed, without deciding, that such a case could exist but concluded that, viewing the evidence in the light most favorable to the plaintiffs, the defendants' conduct was not so egregious that a denial of qualified immunity was justified. The question before us is whether Colla's conduct in this investigation was objectively reasonable. Any possible subjective bad faith Colla may have had, although certainly unacceptable, is irrelevant. As previously noted, the public interest in deterring unlawful conduct is adequately protected by an objective test of the reasonableness of a caseworker's conduct.

Considering the evidence in the light most favorable to the Nations and giving them all reasonable inferences, we hold, as a matter of law, that Colla did not violate any clearly established statutory or constitutional right under the attendant circumstances. Viewed objectively, James was a two-month old baby with an unexplained broken leg who was being treated with a large immobilizing cast. The circumstances suggested the possibility of physical child abuse. Colla, as a CPS caseworker, was attempting to determine whether such abuse had occurred and was maintaining the status quo pending the completion of her investigation. We conclude that Colla's conduct prior to the time a dependency petition was filed did not violate a clearly established statutory or constitutional right of which a reasonable CPS caseworker would have known. Further, assuming that cases exist where the conduct complained of is so egregious so as to justify the denial of qualified immunity, we conclude that Colla's conduct in the present case was not so egregious so as to justify the denial of qualified immunity. Colla was entitled to qualified immunity for her activities prior to the filing of the dependency petition. Accordingly, since Colla's conduct and activities were subject to an unbroken chain of qualified and absolute immunity, the judgment entered against Colla is reversed.[6]

Before concluding this discussion on the appeal and moving on to the cross-appeal, it is appropriate to discuss the dissenting opinion. The dissent disagrees with the majority's conclusion that the Ninth Circuit's approach best suits the public policy reasons underlying the granting of absolute immunity. The basis for this disagreement is the dissent's premise that existing state legislation recognizes only qualified immunity. A.R.S. § 8–546.04(A) provides:

> Any person making a complaint, or providing information or otherwise participating in the program authorized by this article [child protective services] shall be immune from any civil or criminal liability by reason of such action,

---

**6.** In view of our reversal of the judgment on the § 1983 claim, it is not necessary to reach the issue of whether the trial court erred in admitting evidence of James' death including photographs of his body.

*unless such person acted with malice....* (emphasis added).

 There are a number of reasons to reject this dissenting premise. Initially, we note that this argument is raised for the first time on appeal. Nowhere in the trial court did the appellees present the argument that Colla's immunities in a federal rights action are limited by a state immunity statute. The issue should not be decided for the first time on appeal. *Campbell v. Warren*, 151 Ariz. 207, 208, 726 P.2d 623, 624 (App.1986). However, even on the merits the argument should be rejected. Federal law controls the substantive issues in a federal civil rights action brought under 42 U.S.C. § 1983. The same argument now advanced on appeal was considered and rejected by the United States Supreme Court in *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). After determining in *Martinez* that there was no merit to the contention that California's immunity statute was unconstitutional when applied to defeat a tort claim under state law, the Supreme Court expressly stated that "[i]t is clear that the California immunity statute does not control this claim [§ 1983 claim] even though the federal cause of action is being asserted in the state courts." 444 U.S. at 284–85, 100 S.Ct. at 558, 62 L.Ed.2d at 488.

### CROSS–APPEAL

#### State Law Tort Claims

In view of our disposition of the appeal, we need not address the issue of whether the trial court erred in granting a directed verdict in favor of Colla on the issue of liability and damages for James' death on the § 1983 claim. Because we hold that the Nations' § 1983 claim against Colla is barred by the application of the absolute and qualified immunities, we address the issue on the Nations' cross-appeal regarding the trial court's findings that the Nations' failure to comply with the Arizona claims notice statute did not constitute excusable neglect and the trial court's subsequent dismissal of their state law tort claims.

 Before trial, Colla moved to dismiss the Nations' claims on the grounds that the Nations' failed to comply with the Arizona claims notice statute, A.R.S. § 12–821. The Nations responded that the failure to comply was the result of excusable neglect as they had attempted several times to obtain counsel but were unable to do so because of their financial situation. The Nations alleged that none of the attorneys with whom they had consulted informed them of the one year time limit provided for by A.R.S. § 12–821, although they were advised of the two year statute of limitations on medical malpractice claims. The Nations alleged that they were emotionally devastated by the death of their son and the events that transpired and, as a result, they were experiencing marital difficulties. The trial court dismissed the Nations' state law tort claims finding that the failure to comply was not the result of excusable neglect. As previously discussed, the case proceeded to trial with the Nations' only theory of recovery being § 1983.

On appeal, the Nations argue that the trial court erred in refusing to find excusable neglect and that they should have been allowed to proceed with their state law tort claims. Colla responds that the trial court correctly dismissed the Nations' claims and that the claims should not be reinstated. Colla first argues that the case of *Pritchard v. State*, 163 Ariz. 427, 788 P.2d 1178 (1990), should not be given retroactive application in the present case. Colla argues that although there is a presumption that civil cases are to be given retroactive and prospective application, the presumption is overcome in the present case as *Pritchard* overrules clear precedent. Colla argues that the case law prior to the *Pritchard* decision treated the failure to comply with the statute as a jurisdictional bar. Colla further argues that the factors enumerated in *Law v. Superior Court*, 157 Ariz. 147, 755 P.2d 1135 (1988), mandate that *Pritchard* be given only prospective application. The Nations respond that the *Pritchard* case does not overrule clear and reliable precedent and Colla has failed to demonstrate any prejudice from the application of the *Pritchard* case to the present case.

A.R.S. § 12–821 provides in relevant part:

> Authorization of claim against public entity of public employee; definition
>
> A. Persons who have claims against a public entity or public employee shall file such claims in the same manner as that prescribed in the Arizona Rules of Civil Procedure, Rule 4(D) within twelve months after the cause of action accrues. Any claim which is not filed within twelve months after the cause of action accrues is barred and no action may be maintained except upon a showing of excusable neglect if the action is brought within the otherwise applicable period of limitations, provided that if there is no excusable neglect, and if the absence of excusable neglect is because of the conduct of the claimant's attorney, then the action shall proceed, and the public entity and public employee shall have a right of indemnity against the claimant's attorney for any liability assessed in the action.

In *Pritchard*, the Arizona Supreme Court held that the failure to comply with the claims notice statute is not a jurisdictional prerequisite but a requirement more analogous to a statute of limitations. Accordingly, the court held that the issues of excusable neglect and incompetence are to be resolved like any other issue of fact in a case. The court further held that the notice of claims time limit is essentially procedural in nature and, therefore, subject to waiver, estoppel and equitable tolling.

We find it unnecessary to decide the issue of retroactivity. The claims statute was amended to its present form in 1984, and became effective August 3, 1984. The cases relied upon by Colla in her argument against retroactive application of *Pritchard* are cases interpreting the statute before it was amended. The *Pritchard* case is an interpretation of the amended statute and therefore does not change prior law. Additionally, the court in *Pritchard* stated, "[t]his court has never held that § 12–821 is jurisdictional." *Id.* 163 Ariz. at 432, 788 P.2d at 1183.

We must now determine whether the Nations have put forth sufficient evidence to create a factual issue to be decided by a jury. We examine this question in light of the standards in *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990). The test is whether the Nations have put forth sufficient evidence such that a reasonable jury could find that the failure to comply with the claims notice statute was the result of excusable neglect. We conclude that the Nations have put forth sufficient evidence to create a jury question on the issue. Accordingly, we reverse the trial court's dismissal of the Nations' state law tort claims and remand the case to the trial court for further proceedings.

In summary, on appeal the judgment entered against appellant Colla on the § 1983 claim is reversed. On the cross-appeal the trial court's dismissal of the Nations' state law tort claims is reversed and the matter remanded for further proceedings consistent with this decision.

BROOKS, P.J., concurs.

JACOBSON, Judge, dissenting in part; concurring in part:

I write separately to express my disagreement with the majority on the issue of the quality of the immunity to be afforded child protective service caseworkers in 42 U.S.C. § 1983 actions.

I agree with the majority that the trial court applied the wrong legal test in determining whether excusable neglect existed for the plaintiffs' failure to timely file a claim under A.R.S. § 12–821. It is clear that the trial court treated this failure as a jurisdictional prerequisite and did not consider, or allow the jury to consider, whether the failure was excusable. Reasonable people could differ on this issue, and the majority is correct in remanding the matter for further proceedings.

This does not, however, render moot the claims under § 1983 as the trial court may conclude the failure to timely file a claim was not excusable, a finding that could be made under the facts presented, and thus the state tort claims could be barred.

I turn then to the § 1983 claim. I agree that the issue of the type of immunity to be afforded under the federal statute is a matter of federal law. *See Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). If the federal law were clear on this issue and if the blackboard upon which this issue was to be written were clean, I might agree with the majority that absolute immunity should be afforded persons charged with the statutory obligation to investigate and institute judicial proceedings affecting children. However, the United States Supreme Court has not spoken on the immunity to be afforded a CPS caseworker and the federal circuits are not in agreement. *Compare Austin v. Borel*, 830 F.2d 1356 (5th Cir. 1987) (affording only qualified immunity to state child protection worker in filing verified complaint seeking removal of children from parents) *with Meyers v. Contra Costa County Dep't of Social Servs.*, 812 F.2d 1154 (9th Cir.1987) (holding social service worker entitled to absolute immunity in connection with preparation and filing of child dependency proceedings).

Given this split, I might be persuaded, as is the majority, that the Ninth Circuit approach best suits the public policy reasons underlying the granting of absolute immunity. However, the blackboard upon which this public policy decision is to be made is not clean. The Arizona legislature has spoken on the exact issue facing this court, that is, absolute versus qualified immunity. A.R.S. § 8–546.04(A) provides:

> Any person making a complaint, or providing information or otherwise participating in the program authorized by this article [child protective services] shall be immune from any civil or criminal liability by reason of such action, *unless such person acted with malice....*

(Emphasis added.) This is a classic definition of qualified immunity.

Although this is a federal law issue, 42 U.S.C. § 1988 provides that the jurisdiction to be exercised for the protection of persons in the civil rights shall

> ... be exercised and enforced in conformity with the laws of the United States ..., the common law, as modified and changed by the constitution and *statutes of the State* wherein the court having jurisdiction of such civil or criminal cause is held....

While § 1988 may not be fully applicable to all aspects of § 1983 actions, it has been applied in determining the applicable statute of limitations to be imposed in such an action. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Contrary to defendant's assertion, *Martinez v. California* does not hold that a state immunity statute can never be considered in determining § 1983 immunity. I see no federal impediment in applying the state statute in determining the extent of the immunity to be granted state officials in a § 1983 action.

Moreover, in view of this statute, the underlying rationale for granting absolute immunity disappears. This rationale was expressed in *Meyers:*

> The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit.

812 F.2d at 1157. Granting absolute immunity alleviates that fear; qualified immunity does not because the issue whether the caseworker acted with malice is still on the judicial table. Thus, in Arizona at least, the public policy reason for granting absolute immunity is not present because that same caseworker is going to be faced with a state tort claim in which only qualified immunity is afforded.[7]

---

7. The defendant has not argued that the immunity established by A.R.S. § 8–546.04 is not applicable to the acts complained of here.

I therefore conclude that, although the issue of granting immunity is a federal question, in the absence of a federal decision in the matter, deference should be given to the Arizona statute.

I would therefore affirm the trial court's action on the § 1983 claim,[8] and remand on the state tort claim.

---

8. I likewise agree with the majority's reasoning concerning the alleged interference with the removal of the child from the hospital, the grant-

ing of only qualified immunity for that act, and the resolution flowing from that qualified immunity.