874 P.2d 1010

Robert **CARROLL**, Plaintiff–Appellant,

v.

Nina T. **ROBINSON** and John Doe Robinson, wife and husband, Darwin J. Cox and Jane Doe Cox, husband and wife, Ted Williams and Jane Doe Williams, husband and wife, Arizona Department of Health Services; Arizona Department of Economic Security, State of Arizona, Defendants–Appellees.

No. 1 CA–CV 91–0593.

Court of Appeals of Arizona,
Division 1, Department D.

May 12, 1994.

Richard D. Engler, Yuma, for plaintiff-appellant.

Grant Woods, Atty. Gen. by Terrence E. Harrison, Asst. Atty. Gen., Phoenix, for defendants-appellees.

OPINION

GRANT, Judge.

Appellant Robert Carroll ("plaintiff") appeals from the trial court's grant of summary judgment for the defendants and from the denial of a Motion for a New Trial. He alleges that the defendants' actions: 1) defamed him; 2) tortiously interfered with the business relationship between him and his employer; 3) inflicted severe emotional distress; and 4) deprived him of constitutionally protected property and liberty interests without due process. We affirm in part, reverse in part, and remand.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff became the director of the Sunshine Montessori School in 1979 when he signed an at-will employment contract with his mother, Sibyl Carroll, the owner of the school. Plaintiff remained in that position until late Spring, 1987, when the State Departments of Human Services (DHS) and Economic Security (DES) were notified of three separate allegations of child sexual abuse against him. Since Sunshine Montessori was under the licensing authority of DHS and had a contract with DES to provide day care services, both agencies investigated these charges.

The first two allegations against plaintiff were classified as "unable to determine" and "not substantiated." Neither charge was pursued past the initial investigation. The third allegation proved more serious. On June 11, 1987, the mother of the child informed the Yuma Police Department that she believed her son had been molested by "Bob Carroll." The next day, Myrna Bowles, a DHS employee, and Norma Flanagan, a DES employee, talked to the child's mother about the allegations, and received a medical report by Dr. Jane Wilson that indicated that the child had in fact been molested. Bowles and Flanagan interviewed the child, who said "Mr. Bob" touched him. Bowles and Flanagan were also working cooperatively with the Yuma Police Department and were aware that the child told the police he had been

touched by another man named Virgil. By June 15, DHS and DES requested that plaintiff be kept away from the school until their investigation was completed.

On June 19, 1987, defendant Darwin J. Cox, a DES employee, wrote Sibyl Carroll at the Sunshine Montessori School to inform her that the school's agreement with DES was canceled due to "allegations of sexual abuse by a member of your staff." On September 11, 1987, Nina Robinson sent a letter to Sibyl Carroll demanding that she either remove plaintiff as director or face legal action by DHS. Sibyl Carroll removed her son as director of Sunshine Montessori. Plaintiff then attempted, through a third party, to have his case reviewed and reversed by defendant Ted Williams, Director of the Department of Health Services. Williams declined to change any decision or judgment of the Department and informed plaintiff that there was no avenue for appeal. Plaintiff then filed this action.

## II. ISSUES

The appellant/plaintiff raises the following issues:

1. Was plaintiff entitled to proceed to trial on his state law tort claims?

2. Did the trial court err in granting summary judgment to defendants on the section 1983 civil rights claim?

3. Did the trial court abuse its discretion in denying plaintiff's Motion For New Trial?

## III. DISCUSSION

■ On appeal from a grant of summary judgment, we view the facts in the light most favorable to the party against whom the judgment was taken. *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). Furthermore, we may review the entire record to determine whether the trial court abused its discretion in denying plaintiff's Motion For New Trial. *State v. Mecham*, 173 Ariz. 474, 478, 844 P.2d 641, 645 (App.1992).

### A. State Tort Claims

■ The first issue raised on appeal is whether the trial court correctly granted the defendants' Motion For Summary Judgment on plaintiff's state law claims of defamation, interference with a business relationship, and intentional infliction of emotional distress. The trial court found that the plaintiff failed to present evidence that could convince a reasonable person that the defendants acted with actual malice, and thus the defendants were entitled to qualified immunity. "Once an immunity defense has been raised properly, the court determines whether defendants are entitled to immunity." *Chamberlain v. Mathis*, 151 Ariz. 551, 554, 729 P.2d 905, 908 (1986); *Green Acres Trust v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984). The question is therefore one of law, which we review *de novo*.

Qualified immunity protects state officers and employees from liability for the good faith exercise of their discretionary authority. The general rule of governmental immunity from tort liabilities was abandoned by the Arizona Supreme Court in 1963. *Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 387, 381 P.2d 107, 109 (1963). The court continued to recognize governmental immunity in some areas. *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982). In *Ryan* the supreme court said:

Employing the spirit of the Stone decision, we propose to endorse the use of governmental immunity as a defense only when its application is necessary to avoid a severe hampering of a governmental function or thwarting of established public policy. Otherwise, the state and its agents will be subject to the same tort law as private citizens.

*Id.* at 311, 656 P.2d at 600.

■ There is limited governmental immunity for discretionary administrative actions. Ariz.Rev.Stat.Ann. ("A.R.S.") § 41–621(I) (Supp.1993) [1]; *Chamberlain*, 151 Ariz.

---

1. A.R.S. section 41–621(I) provides:
    A state officer, agent, or employee, except as otherwise provided by statute is not personally liable for an injury or damage resulting from

his act or omission in a public official capacity where the act or omission was the result of the exercise of the discretion vested in him if the exercise of the discretion was done in good

at 555–59, 729 P.2d at 909–13; *Evenstad v. State,* 178 Ariz. 578, 585, 875 P.2d 811, 818 (App.1993). State officials are within their discretionary authority when they set policy or perform an act that inherently requires the exercise of their judgment or discretion. *Chamberlain,* 151 Ariz. at 555, 729 P.2d at 909; *Evenstad,* 178 Ariz. at 585, 875 P.2d at 818.

■ This protection from liability is often described as "privilege." Thus qualified immunity is parallel to conditional privilege particularly regarding defamatory communications. This privilege protects the public's interest "in the honest discharge of their duties by public officers...." Restatement (Second) of Torts § 598, comment d (1977). Conditional privileges are limited to particular occasions requiring the exchange of information reasonably thought to be true. Absolute privileges are created by law based on a recognition that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interest. Restatement (Second) of Torts, Ch. 25, topic 2, Title B, "Absolute Privilege Irrespective of Consent," at 242–43. Conditional privilege does not establish an absolute defense. A plaintiff may establish abuse of a conditional privilege by showing actual malice, i.e., that the defendant acted with knowledge of a statement's falseness or with reckless disregard of whether the statement was true. *Lewis v. Oliver,* 173 Ariz. 330, 335, 873 P.2d 668, 673 (App.1993).

■ Since the plaintiff specifically alleges that the defendants acted "within the course and scope of their duties as officials of the State of Arizona," no fact question required a jury determination before the trial court could rule on the application of immunity. *See Chamberlain,* 151 Ariz. at 554, 729 P.2d at 908 ("If the existence of immunity turns on disputed factual issues, the jury determines the facts and the court then determines whether those facts are sufficient to establish immunity."). Instead, the trial

court could resolve the legal issue whether the defendants' actions were discretionary. Whether to revoke the license or contract of a day care provider inherently requires some judgment on the part of those making the decisions. In this case, the defendants considered the molestation allegations and made a discretionary decision regarding the plaintiff. While that decision may well have been based on an assumption that the allegation was true, the purpose of qualified immunity in this context is to allow state employees to exercise their discretion in good faith to protect the welfare of children in day care facilities without fearing that their actions will subject them to civil liability. *See id.* at 555, 729 P.2d at 909; *Lewis v. Oliver,* 173 Ariz. at 335, 873 P.2d at 673. "The state is immune to the same extent as the agents because the caseworkers' defense is not a personal one but rather relates to their role as agents of the state." *Cox v. Fast,* 154 Ariz.Adv.Rep. 15, 17, 1993 WL 513196 (App. Dec. 14, 1993) (quoting *Babcock v. State,* 112 Wash.2d 83, 768 P.2d 481, 493 (1989)).

■ Qualified immunity like conditional privilege can be forfeited, however, if the plaintiff can show that the defendants did not act in good faith. *See* A.R.S. § 41–621(I); *Chamberlain,* 151 Ariz. at 560, 729 P.2d at 914 (immunity does not protect official who acts with malice, i.e., if official acts in reckless disregard of the truth or based on information official knew was false). The trial court ruled that there was insufficient evidence to support a finding of malice and granted the defendants' Motion For Summary Judgment. In denying the Motion For New Trial the trial court confirmed this decision after considering new evidence which the plaintiff argued showed bad faith on the part of the defendants. We now review that decision based on whether the evidence has "so little probative value ... that reasonable people could not agree with the conclusion advanced by [the plaintiff]." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

faith without wanton disregard of his statutory    duties.

■ The evidence only establishes that the defendants knew there was another possible suspect in the child-molesting case or that perhaps the child had been molested twice by different persons. For the plaintiff merely to show that the defendants could have come to a different conclusion than the one they reached is not enough to overcome the defense of qualified immunity. There is no evidence that defendants knew that the accusations against plaintiff were false or that defendants acted in reckless disregard of the truth. Therefore, we affirm the trial court's judgment dismissing plaintiff's state tort claims.

### B. *Section 1983 Claims*

The plaintiff argues that by ordering Sibyl Carroll to fire him or face revocation of her day care license, the individual defendants caused his termination and branded him as a child molester without due process of law, giving rise to an action under 42 U.S.C. section 1983.[2] A person seeking redress of an injury under section 1983 must demonstrate (1) that a person (2) acting under color of state law (3) caused the plaintiff to be deprived of a protected right. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988); *Baker v. Clover*, 177 Ariz. 37, 38, 864 P.2d 1069, 1070 (App.1993). Since the defendants concede that all their actions at issue were taken under color of state law, we now consider the other two elements of plaintiff's section 1983 claim.

### 1. Are Defendants "Persons" Subject To Suit Under Section 1983?

■ Plaintiff sued the state, two state agencies, and defendants Robinson, Cox, and Williams seeking money damages and "such other and further relief as the court may deem just...." The trial court dismissed the complaint in its entirety relying on *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *Will* does not, however, support the trial court's conclusion that the defendants are not "persons" subject to suit under section 1983. To the contrary, the state and its officials are "persons" subject to suit under section 1983 for injunctive relief, *Id.* at 71 n. 10, 109 S.Ct. at 2312 n. 10, and state officials, sued in their individual capacities, are "persons" who may be liable for damages. *Hafer v. Melo*, 502 U.S. 21, ——, 112 S.Ct. 358, 364, 116 L.Ed.2d 301, 313 (1991); *see also Carrillo v. State*, 169 Ariz. 126, 817 P.2d 493 (App. 1991).

In *Will*, the Supreme Court held that section 1983 does not provide for a suit for damages against a state or a state official who is sued in his or her official capacity. 491 U.S. at 71, 109 S.Ct. at 2312. The Court reasoned that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* This quoted language does not mean that suits for injunctive relief against states and state officials cannot be brought under section 1983. The Court made clear that section 1983 contemplates such suits: "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n. 10, 109 S.Ct. at 2312 n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985)). Because plaintiff sought relief against the state in the form of a due process hearing at which he would have an opportunity to rebut the molestation allegations that led to his termination, the trial court erred in concluding that the state, DES, DHS, and defendants Robinson, Cox, and Williams, if they were sued in their official capacities, are not "persons" subject to a suit for injunctive relief under section 1983.

In *Hafer v. Melo*, the Court held that state officials, sued in their individual capacities,

---

**2.** 42 U.S.C. section 1983 states in relevant part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

are "persons" subject to suit for damages under section 1983. 502 U.S. at ——, 112 S.Ct. at 364, 116 L.Ed.2d at 313. The Court explained that the phrase "acting in their official capacities" used in *Will* is "best understood as a reference to the capacity in which the state officer is sued...." *Id.* at ——, 112 S.Ct. at 362, 116 L.Ed.2d at 310. Thus, defendants Robinson, Cox, and Williams must be considered "persons" under section 1983 if they were sued in their individual capacities instead of their official capacities.

To determine whether they were sued in their individual capacities we must examine the pleadings and the course of proceedings. *Carrillo*, 169 Ariz. at 130, 817 P.2d at 497 (official was named in his personal capacity where complaint sought money damages and defendant asserted qualified immunity). The complaint alleged claims for damages against these defendants and their marital communities. The complaint alleged, and subsequent depositions confirmed, that all three of these defendants had some personal involvement in the case. Robinson and Cox signed letters sent to plaintiff's employer, and Williams discussed the matter with agency personnel and personally denied plaintiff the opportunity to appeal the decision that forced him out of his position as director of Sunshine Montessori. As in *Carrillo*, the defendants' answer asserted qualified immunity, an affirmative defense which is only available to government officials sued in their personal capacities. *Id.* Based on these facts, and the Supreme Court's decision in *Hafer*, defendants Robinson, Cox, and Williams were sued in their individual capacities and are "persons" who may be liable for damages under section 1983.

## 2. Did Defendants Cause Plaintiff To Be Deprived Of A Protected Right Without Procedural Due Process?

### a. Causation

■ The defendants argue that because they did not actually terminate plaintiff's employment, they cannot be considered liable for any deprivation of a right arising from loss of that employment. This argument is disingenuous since defendants had licensing authority and made clear that the business would lose its license if it did not fire plaintiff. The defendant's argument also has implications regarding plaintiff's ability to be rehired by other daycare businesses as the state's licensing authority would apply to all daycare businesses within the state. However, the necessary causal connection in section 1983 cases does not need to be direct personal involvement; it is enough to set in motion "a series of acts by others which the actor knows or reasonably should know [will] cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978). Here, the defendants not only should have known of the ultimate consequences of their action, but they threatened legal recourse if their required action was not taken. Defendants' claim that Sibyl Carroll's decision to fire her son was "free and uncompelled" disregards uncontested evidence to the contrary. The facts in this case establish that the defendants prompted the actions taken by Sibyl Carroll.

### b. Did plaintiff have a property or liberty interest entitling him to procedural due process?

Although plaintiff's section 1983 claims should not have been dismissed on the basis of *Will*, the dismissal may still be proper if the plaintiff failed to state a claim for deprivation of a protected property or liberty interest without due process. We review *de novo* the trial court's ruling on the defendant's Motion For Summary Judgment as to these issues. *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir.1987).

### i. Property Interest

■ Plaintiff claims that he was deprived of a property right without due process. We must determine whether the written employment contract or a subsequent understanding between plaintiff and Sibyl Carroll established a protected property interest under Arizona law. *Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). The Ninth Circuit has held that at-will employment contracts alone do not create a protected property interest. *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d

**460**

465, 477 (9th Cir.1991). Therefore, the plaintiff must show that he had more than an at-will contract.

■ The plaintiff argues that the 1979 written employment contract, which was explicitly an at-will contract, should not govern, despite its clause requiring that any change in the terms of the contract be made in writing. However, the plaintiff's only evidence that his employment changed to something more than an at-will relationship is Sibyl Carroll's deposition. She said that she forgot about the contract and that plaintiff had no particular terms or length of employment. Even if that statement were enough to overcome the requirement that changes to the contract be made in writing, it would not be enough to change the nature of the employment relationship. Under Arizona law, the presumption is that employment for an indefinite duration is terminable at-will. *Wagenseller,* 147 Ariz. at 375, 710 P.2d at 1030; *Leikvold v. Valley View Community Hosp.,* 141 Ariz. 544, 546, 688 P.2d 170, 172 (1984). It is not enough for plaintiff to simply claim that it is reasonable to presume that his employment was terminable only for just cause. The *Wagenseller* court held that the at-will termination rule means that an employer may fire for good cause or for no cause—but the employer may not fire for bad cause. 147 Ariz. at 378, 710 P.2d at 1033. Because plaintiff has not presented any evidence to overcome the presumption of at-will employment, and since he does not allege that he was fired for a bad cause, he does not have a property interest recognized by Arizona law. Therefore, the defendants could not have deprived him of a protected property interest.

### ii. Liberty Interest

■ The plaintiff complains that by demanding that his mother terminate him because of alleged sexual misconduct without affording him a hearing to rebut the allegations, the defendants deprived him of a protected liberty interest in his reputation without due process of law.

■ A dismissal from employment implicates an individual's Fourteenth Amendment liberty interest if the discharge stigmatizes the individual with charges of moral turpitude or dishonesty. *Henderson,* 940 F.2d at 477; *Brady v. Gebbie,* 859 F.2d 1543, 1552 (9th Cir.1988), *cert. denied,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989); *Vanelli v. Reynolds Sch. Dist. No. 7,* 667 F.2d 773, 777 (9th Cir.1982). These types of allegations may seriously damage an individual's standing in the community or effectively preclude future work in the individual's chosen profession. *Henderson,* 940 F.2d at 477; *Merritt,* 827 F.2d at 1373. "In order to trigger the procedural protections of due process attendant to a properly presented liberty interest claim, a plaintiff must show that '1) the accuracy of the charge is contested; 2) there is some public disclosure of the charge; and 3) the charge is made in connection with termination of employment.' " *Brady v. Gebbie,* 859 F.2d at 1552 (quoting *Matthews v. Harney County, Or., School Dist. No. 4,* 819 F.2d 889, 891–92 (9th Cir.1987)). Although the public disclosures in *Brady* and *Matthews* involved press releases and newspaper articles, we do not think that the "public disclosure" element requires a showing of such broad publication. Since an individual's protected liberty interest concerns the ability to earn a living in one's chosen field, publication to a person's present or future employer constitutes public disclosure. *Compare Vanelli,* 667 F.2d at 776–77, 778 n. 7 (noting that sufficient evidence supported trial court's finding of public disclosure where plaintiff "found difficulty securing permanent position due to circumstances surrounding his dismissal . . . .") *with Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976) (former police officer was not deprived of liberty interest when city did not disclose reasons for his discharge to third parties); *cf.* W. Page Keeton *et al., Prosser And Keeton On The Law Of Torts* § 113 (5th ed. 1984) ("publication to any third person" satisfies publication element in defamation action).

Plaintiff has presented evidence that could reasonably support all the elements of this three-part proof requirement. First, plaintiff denied the accuracy of the molestation allegation when first questioned, and he continued to deny it in his complaint in the trial

court. Second, the letters from defendants Cox and Robinson to plaintiff's employer can constitute public disclosure because they discuss the allegation of child molestation by a member of the Sunshine School's staff and the necessity of dismissing plaintiff. In addition, Sibyl Carroll said in her affidavit that Robinson told her on the phone that plaintiff had to be removed because of the child molestation allegation. Third, the allegations of child molestation expressed in the letters from and in the phone conversation with Robinson were made in connection with a demand for termination of plaintiff's employment.

We hold that, as a matter of law, the accusations of child molestation leading to plaintiff's termination implicated a liberty interest because the allegations were sufficiently serious to stigmatize him in a way that would impact his ability to be gainfully employed. The charges of sexual abuse of children would seriously damage the accused's standing in the community and could effectively preclude him future work in his chosen profession. Precisely because the crime is so repugnant, the accusation must be made with caution, and the alleged abuser must receive procedural due process.

■■■ The Fourteenth Amendment protects individuals from deprivations of property or liberty without procedural due process. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). "At a minimum, due process requires notice and a hearing where the individual has a meaningful opportunity to confront the evidence against him." *Brady v. Gebbie,* 859 F.2d at 1554; *Vanelli,* 667 F.2d at 780. The remedy mandated by the Due Process Clause for a claim based on stigmatization during discharge from employment is a hearing at which the aggrieved party has an opportunity to clear his name. *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); *Brady v. Gebbie,* 859 F.2d at 1554.

Defendants have not afforded plaintiff any opportunity to clear his name, either before or since his termination. When Sibyl Carroll expressed her concern that plaintiff had never been afforded an opportunity to clear his name and that Robinson was acting as "investigator, prosecutor, judge and jury," Robinson allegedly responded, "Believe me, I have the authority," and that the principle that one is considered innocent until proven guilty "no longer applies to child molesters." We conclude the plaintiff's claim of deprivation of a liberty interest presented genuine issues of material fact and therefore summary judgment as to this claim was improperly granted.

*c. Qualified immunity*

■■■ The defendants argue that even if plaintiff was deprived of a liberty interest without due process, summary judgment was proper because they have qualified immunity from damages. The applicability and scope of the immunity of a state official in a section 1983 action is a question of federal law. *Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980); *Nation v. Colla,* 173 Ariz. 245, 253, 841 P.2d 1370, 1375 (App.1991).

Various types of public officials and employees have been held to be entitled to either absolute or qualified immunity from damages under section 1983. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors); *Babcock v. Tyler,* 884 F.2d 497 (9th Cir.1989), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1118, 107 L.Ed.2d 1025 (1990) (social workers in connection with child dependency proceedings); *Coverdell v. Department of Social & Health Serv.,* 834 F.2d 758 (9th Cir.1987) (child protective service social workers); *Meyers v. Contra Costa County Dep't of Social Serv.,* 812 F.2d 1154 (9th Cir.1987), *cert. denied,* 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987) (social service workers in child dependency proceedings). Likewise, this court has also extended absolute immunity to child protective service caseworkers for activities relating to the initiation and filing of child dependency petitions. *Nation v. Colla,* 173 Ariz. at 252, 841 P.2d at 1377. We recently

applied the reasoning in *Nation v. Colla* to extend absolute immunity to public fiduciaries who have a role equivalent to a CPS caseworker in "assert[ing] the state's interest in protecting someone otherwise unable to protect herself." *Cox v. Fast,* Slip op. at 7, 1993 WL 513196.

■ Qualified immunity protects an official from civil liability in a section 1983 action for conduct which "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Colla,* 173 Ariz. at 253, 841 P.2d at 1378. Whether the legal right allegedly violated was clearly established is a question of law; whether a reasonable official would know that he or she was violating that clearly established law is a question for the jury. *Brady v. Gebbie,* 859 F.2d at 1556.

When the defendants acted in 1987 the law was clearly established that: 1) a liberty interest was implicated when an individual was stigmatized by charges of moral turpitude made in the context of discharge from employment, *Vanelli,* 667 F.2d at 777; 2) the Due Process Clause was triggered in such a case if the accuracy of the charge was disputed, the charge was publicly disclosed, and the charge was made in connection with termination of employment, *id.* at 777–78; 3) the fundamental requirement of due process was the opportunity to be heard at a meaningful time and in a meaningful manner, *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 902; and 4) the minimum due process for deprivation of a liberty interest involving stigmatization during termination of employment was a hearing where the individual would have an opportunity to clear his name, *Codd,* 429 U.S. at 627, 97 S.Ct. at 884. Since plaintiff's liberty interest and right to procedural due process were clearly defined at the time of the defendants' actions, and a question of fact exists as to whether defendants reasonably should have known that they were violating plaintiff's rights, the trial court erred in granting summary judgment.

## IV. CONCLUSION

We affirm the trial court's order dismissing the plaintiff's state tort claims. However, we hold that plaintiff's section 1983 claim for deprivation of a protected liberty interest without due process should have survived the Motion For Summary Judgment because: 1) the defendant state and defendant state agencies are "persons" subject to suit under section 1983 for purposes of injunctive relief and 2) the individual defendants are "persons" subject to suit under section 1983 for purposes of compensatory damages. Therefore, we reverse that portion of the trial court's ruling on the Motion For Summary Judgment and remand for further proceedings.

GERBER, P.J., and FOREMAN, J., concur.

NOTE: The Honorable John Foreman, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Article VI, Section 3 of the Arizona Constitution.