Heidi BAKER; Evan BAKER, a minor by and through his guardian ad litem, Heidi Baker, Plaintiffs–Appellees,

v.

I.G. RACANSKY; Mavis Knox, Defendants–Appellants.

No. 88–15056.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 27, 1989.

Decided Sept. 26, 1989.

Christine E. Motley, Deputy, County Counsel's Office, County of San Mateo, Redwood City, Cal., for defendants-appellants.

Dennis John Woodruff, Oakland, Cal., and David R. Lipson, Berkeley, Cal., for plaintiffs-appellees.

Louise H. Renne, City Atty., Loretta M. Giorgi and Julia Ten Eyck, Deputy City Attys., for City and County of San Francisco, amicus curiae for appellants.

Donald L. Clark, County Counsel, County of Santa Clara by Jeffrey L. Bryson, Deputy, San Jose, Cal., Richard L. Moore, County Counsel, County of Alameda by Lorenzo E. Chambliss, Sr., Deputy County Counsel, Oakland, Cal., Henry G. Murdock, Dist. Atty., County of Alpine, Markleeville, Cal., Susan Roff, County Counsel, County of Butte by Robert Glusman, Chief, Oroville, Cal., Max E. Robinson, County Counsel, County of Fresno by Howard K. Watkins, Sr. Deputy, Fresno, Cal., B.C. Barmann, County Counsel, County of Kern, Philip E. Dunn, Jr., Chief Deputy, Bakersfield, Cal., Cameron L. Reeves, County Counsel, County of Lake, Lakeport, Cal., Douglas J. Maloney, County Counsel, County of Marin, Thomas G. Hendricks, Asst. County Counsel, San Rafael, Cal., H. Peter Klein, County Counsel, County of Mendocino by Sandra L. Applegate, Deputy, Ukiah, Cal., James A. Curtis, County Counsel, County of Nevada, Nevada City, Cal., Dwight L. Herr, County Counsel, County of Santa Cruz by Jane M. Scott, Asst. County Counsel, Santa Cruz, Cal., David R. Frank, County Counsel, County of Shasta by Karen Keating Jahr, Asst. County Counsel, Redding, Cal., James Botz, County Counsel, County of Sonoma by Kathleen Larocque, Deputy, Santa Rosa, Cal., Lita O'Neil Blatner, County Counsel, County of Tulare, Visalia, Cal., for amici curiae.

Before BROWNING, PREGERSON and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

This appeal involves a lawsuit filed by Evan Baker and his mother Heidi Baker ("the Bakers") under 42 U.S.C. § 1983 against two socialworkers who took temporary custody of Evan, then five years old, during the course of a child abuse investigation. The socialworkers, I.G. Racansky and Mavis Knox, appeal the district court's denial of their motion for summary judgment in which they asserted a claim of qualified immunity. We reverse.

## FACTS AND PROCEDURAL HISTORY

On September 9, 1986, Diane Brodeur reported to the San Mateo Police Department that she believed her 4–year–old son Aaron and her 2–year–old daughter Melissa had been sexually abused by Paul Baker, the Brodeurs' next-door neighbor. Paul is

the husband of Heidi Baker and the father of Evan Baker.

Ms. Brodeur's report was referred to Kassandra Dills, a San Mateo County socialworker. Ms. Dills investigated the case. She interviewed Mr. and Mrs. Brodeur and the two Brodeur children, and took extensive notes of these interviews. Ms. Dills' notes detailed the Brodeurs' allegations of child molestation and mentioned that Melissa had a vaginal rash which might be evidence of abuse.[1]

Within the next two days, the case was transferred from Ms. Dills to Racansky. Ms. Dills gave Racansky her notes and told him that she "had no doubt that [the Brodeur] children were clearly molested by their next-door neighbor. And they had implied or indicated that the five-year-old son, Evan, was likely to have been molested as well."

On September 11, 1986, Racansky and Police Sergeant Gregory Love interviewed Evan at school. Evan denied that he had been molested, but Racansky testified in his deposition that Evan's physical reactions suggested otherwise. That same day, Sergeant Love took Evan into custody and Racansky arranged for Evan's temporary protective detention. The police also arrested Paul Baker.

Racansky refused Heidi's repeated requests to release Evan to her. Racansky also refused to release Evan to his uncle's care. The County kept Evan until the dependency hearing was held on September 16. He was then released to Heidi.

The Bakers contend that the defendants violated their civil rights by seizing Evan and holding him until the court hearing. The defendants contend they are entitled to qualified immunity.[2]

## APPELLATE JURISDICTION

■ Normally, the denial of summary judgment is not an appealable order. However, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Kraus v. County of Pierce,* 793 F.2d 1105, 1108 (9th Cir.1986) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985)), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987); *accord Chalkboard, Inc. v. Brandt,* 879 F.2d 668, 670 (9th Cir.1989). We have jurisdiction over this appeal because the qualified immunity issue can be resolved as a matter of law giving the Bakers the benefit of all reasonable inferences in their favor. *See White v. Pierce County,* 797 F.2d 812, 815–16 (9th Cir.1986).

## QUALIFIED IMMUNITY

We review "*de novo* the denial of a qualified immunity defense." *Tribble v. Gardner,* 860 F.2d 321, 323 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1988). "Government officials performing discretionary functions enjoy

---

1. The Bakers argue that Dills' report was riddled with inaccuracies. They base their criticisms on transcripts of tape recordings of Aaron's and Melissa's interviews. Racansky and Knox contend that the transcripts are irrelevant. We agree. Only the information Racansky and Knox had when they made the challenged decisions is relevant. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987) (defining the relevant inquiry as whether a reasonable official could have believed the challenged conduct to be lawful "in light of ... the information ... possessed" by the official). At the time Evan was taken into protective custody, Racansky had a copy of Dills' written notes and her oral report. The Bakers did not offer any evidence that Racansky or Knox ever listened to the tapes during the relevant time period, and the tran-

scripts were created long afterwards. Thus, the transcripts are irrelevant.

2. The defendants did not appeal an earlier order denying summary judgment on their claim of absolute immunity. Thus, the question of whether the socialworkers are entitled to absolute immunity is not before us. *Cf. Meyers v. Contra Costa County Dept. of Soc. Servs.,* 812 F.2d 1154, 1157 (9th Cir.), *cert. denied,* 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987); *Coverdell v. Dept. of Social and Health Servs.,* 834 F.2d 758, 764 (9th Cir.1987); *Jenkins v. County of Orange,* 212 Cal.App.3d 278, 260 Cal.Rptr. 645 (1989) (granting absolute immunity to social workers who took a child into custody without a court order).

qualified immunity from civil damages so long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *F.E. Trotter, Inc. v. Watkins,* 869 F.2d 1312, 1314 (9th Cir.1989) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *see also Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987).

The parties agree that the plaintiffs have the burden to prove that the right which the defendants allegedly violated was clearly established at the time of the alleged misconduct. *See also Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984). The parties disagree about the level of "generality at which the relevant 'legal rule' is to be identified." *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3039. This disagreement highlights a difficult aspect of the qualified immunity doctrine.

> In *Anderson,* the Court explained that: The operation of this ["clearly established"] standard ... depends substantially on the level of generality at which the relevant "legal rule" is to be identified.... [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson,* 483 U.S. at 639–40, 107 S.Ct. at 3039–40 (citations omitted). We have said that "the Court [in *Anderson* ] held that the right [allegedly infringed by the defendant] referenced by the *Harlow* test is not a general constitutional guarantee (*e.g.,* the fourth amendment freedom from unreasonable searches and seizures), but its application in a particular context (*e.g.,* whether the particular facts gave rise to probable cause or exigent circumstances)." *Todd v. United States,* 849 F.2d 365, 370 (9th Cir. 1988); *cf. Backlund v. Barnhart,* 778 F.2d 1386, 1389 (9th Cir.1985) ("the plaintiff must show that *the particular facts* of his case support a claim of clearly established right").

The Bakers contend that Racansky and Knox violated their fourteenth amendment right to procedural due process and their fourth amendment right to protection from unreasonable seizure. According to the Bakers, they satisfy their burden under *Harlow* and *Anderson* with respect to their fourteenth amendment claim by proving that "on September 11, 1986 it was clearly established that their interest in family unity and integrity was a protected 'liberty' of which they could not be deprived without a prior court hearing, even temporarily, unless an emergency existed." In the context of the fourth amendment, the Bakers argue that as of September 11, 1986 socialworkers clearly could not, without a warrant, deprive parents of physical custody of their children even temporarily, absent probable cause and exigent circumstances. The Bakers also assert that, for purposes of qualified immunity, "Fourteenth and Fourth Amendment phrasings of the right are functionally indistinguishable."

The Bakers' formulation of their clearly established rights is deficient. *Anderson* specifically rejected the Eighth Circuit's conclusion that the existence of a clearly established "right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances" vitiated the defendant's qualified immunity claim. 483 U.S. at 640–41, 107 S.Ct. at 3039–40. The Eighth Circuit erred by refusing "to consider the argument that it was *not* clearly established that the circumstances with which Anderson was confronted did not constitute probable cause and exigent circumstances." *Id.* The Bakers' description of their "clearly established" rights under the fourteenth and especially under the fourth amendment closely resembles the discredited Eighth Circuit formula.

Under *Anderson*, the relevant question in the present case is whether a reasonable social worker could have believed that taking Evan and holding him in temporary protective custody was lawful "in light of clearly established law and the information" the socialworkers' possessed. *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040; *accord F.E. Trotter*, 869 F.2d at 1315.

■ The parties agree that, in 1986, there was no binding Ninth Circuit or Supreme Court precedent which clearly established when state officials could or could not take a child into temporary protective custody. And as a general rule, we do not look to post-incident decisions to determine whether the law was then clearly established. *See Melear v. Spears*, 862 F.2d 1177, 1184 n. 8 (5th Cir.1989); *Capoeman v. Reed*, 754 F.2d 1512, 1515 (9th Cir.1985). Thus, the district court declined to consider *Myers v. Morris*, 810 F.2d 1437 (8th Cir.), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), and *Robison v. Via*, 821 F.2d 913 (2d Cir.1987), because these cases were decided months after Evan had been returned to his mother. The district court reasoned that these post-incident cases could not have "established" the law retroactively. We agree. However, both *Morris* and *Robison* considered the question whether the law governing child abuse investigations was clearly established in 1986 or before. Such cases are relevant persuasive authority on this issue. *See Roth v. Veterans's Admin.*, 856 F.2d 1401, 1408 (9th Cir.1988) (relying on post-incident authority).

In *Myers v. Morris*, 810 F.2d 1437 (8th Cir.), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), the Eighth Circuit stated that:

> the parental liberty interest in keeping the family unit intact is not a clearly established right in the context of reasonable suspicion that parents may be abusing children. If law enforcement personnel who have at least arguable probable cause to believe that adults have been molesting children are not entitled to reasonable belief that the adults

may pose a danger to their own children, then the law was (and is) not clearly established on this point. There is certainly no available legal precedent to this effect.

*Morris*, 810 F.2d at 1463.

*Morris* is the case closest to our case. Here, the defendants Racansky and Knox refused to surrender Evan to Heidi Baker, who was not implicated in the investigation, even after her husband, Paul, was in jail. Based upon the circumstances then existing, Racansky and Knox believed that Heidi may have been unable or unwilling to protect Evan from Paul if Paul were released from jail. *Cf. Robison*, 821 F.2d at 922 (innocent spouse's inability to protect child may justify temporary protective custody). *Morris* involved a similar situation. The *Morris* Court gave qualified immunity to officials who took custody of two sets of children even though the fathers, who were the alleged abusers, were in jail and the mothers had not yet been implicated. *Morris*, 810 F.2d at 1442.

■ The present case involves the difficult balancing of a family's right to autonomy against the state's interest in protecting minor children from abuse. *Cf. Woodrum v. Woodward County*, 866 F.2d 1121, 1125 (9th Cir.1989). As the *Morris* court noted in passing:

> The Seventh Circuit ... has suggested that if the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered "clearly established" at least in the absence of closely corresponding factual and legal precedent.

*Morris*, 810 F.2d at 1462 (citing *Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir.), *cert. denied*, 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986)); *cf. Roth v. Veteran's Admin.*, 856 F.2d 1401, 1408 (9th Cir.1988) (declining to give *Benson* a broad reading). This passage in *Morris* underscores the difficulties faced by social workers trying simultaneously to help preserve families and to protect vulnerable children from abuse.

While not as closely on point, *Hodorowski v. Ray*, 844 F.2d 1210 (5th Cir.1988), also supports the socialworkers' position. There, state officials investigated the possible abuse of two children by their father. Once they had determined that the father may have been abusing the children and that the children had been injured, they took temporary protective custody of the children. The Fifth Circuit held that the defendants were entitled to qualified immunity for their summary removal of children from parental custody. The court reasoned that the Supreme Court cases which had established the right of family integrity, *e.g., Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599 (1982), and *Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972), were distinguishable because they involved a "state's attempt to sever *permanently* the parent-child relationship." *Hodorowski*, 844 F.2d at 1217. The Fifth Circuit concluded that: "The present case, by contrast, concerns an attempt to obtain only *temporary* custody of the children. This difference alone is sufficient to prevent us from concluding that appellants' conduct violated clearly established law." *Id.*

An additional principle which guides us in the present case was articulated by the Second Circuit in *Robison v. Via*, 821 F.2d 913 (2d Cir.1987). There, the court explained that:

> [I]n 1981, when the Robison children were taken into custody, it was clearly established that a parent's interest in the custody of his or her children was a constitutionally protected "liberty" of which he or she could not be deprived without due process, which would generally require a predeprivation hearing. However, it was, and remains, equally well established that officials may temporarily deprive a parent of custody in "emergency" circumstances "without parental consent or a *prior* court order."

821 F.2d at 921 (citation omitted). *Robison*, however, did not decide the question of what kind of situation justifies emergency protective custody without a predeprivation hearing, and more important, what does not.

Perhaps understanding the limited scope of *Robison*, the Bakers rely on four cases cited in *Robison* which they assert clearly established their right to a hearing or warrant prior to the seizure of Evan by the socialworkers absent proof of an emergency threatening his safety. *See, e.g., Duchesne v. Sugarman*, 566 F.2d 817, 825–26 (2d Cir.1977); *Lossman v. Pekarske*, 707 F.2d 288, 291–92 (7th Cir.1983); *Newton v. Burgin*, 363 F.Supp. 782, 785–87 (W.D.N.C. 1973), *aff'd without opinion*, 414 U.S. 1139, 94 S.Ct. 889, 39 L.Ed.2d 96 (1974); *Sims v. State Dept. of Public Welfare*, 438 F.Supp. 1179, 1192 (S.D.Tex.1977), *reversed on other grounds sub nom. Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).[3] These cases held or assumed that the facts before the courts warranted summary removal of the children without a prior hearing. *See Lossman*, 707 F.2d at 292; *Duchesne*, 566 F.2d at 826; *Sims I*, 438 F.Supp. at 1189–90; *Newton*, 363 F.Supp. at 787. Taken as a group, the four cases offer little insight as to what circumstances do *not* justify taking a child into protective custody without a prior hearing. Nor do any of the cases even hint that the circumstances faced by Racansky and Knox in September 1986 did not warrant a decision to place Evan in the County's protective care on a temporary basis. *See Morris*, 810 F.2d at 1463 (clearly established law does not prevent an official from taking temporary custody of a child based on evidence that one of the child's parents had abused other children).

Here, the Bakers' neighbor, Mrs. Brodeur, reported that her 2–year–old daughter had a vaginal rash which could have resulted from the child being molested. She also stated that her daughter and her 4–year–

---

**3.** *Sims'* authority is virtually nullified by the case's subsequent reversal. A reasonable social worker could assume that the reversed case had no authority. *See Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102, 1113 (9th Cir.1988)

(the court does not "require of most government officials the kind of legal scholarship normally associated with law professors and academicians"), *cert. denied*, — U.S. —, 109 S.Ct. 1641, 104 L.Ed.2d 157 (1989).

old son had told her that Paul Baker had sexually abused them. The Brodeur children later confirmed this to Ms. Dills. According to the Brodeur children, Evan was present at the time they were molested, but he was asleep on his bunk. Before Evan was taken into custody, he was interviewed by Police Sergeant Gregory Love and Racansky. During this interview, Evan denied that his father had molested him, but he displayed a marked reaction when he was asked about being touched or any kind of sexual contact with his father. Racansky, in his deposition testimony, described Evan's reaction:

> Evan was evasive. Once we got to a point of discussing [matters which were] sexual in nature, relating to his father, his behavior changed. His body position changed. The way he answered the questions changed.... Once the interview turned to any kind of sexual action involving his father, there was a marked difference in the interview.
>
> To Evan, discussing being touched or any kind of sexual contact was extremely anxiety-producing, especially referring to his father, which to some extent is understable, but not in the way, extreme way that he has demonstrated.... I think, I mentioned he probably got up. He started walking around the room. He would crawl up in his chair, and that's why I would say—that's enough because I could see that it was causing him a lot of stress which is known, and which I don't want a child to undergo.

Sergeant Love was also present during the interview. He testified in his deposition describing Evan's reaction:

> I can describe his reaction in that he, when, if I remember correctly, the question led to that particular circumstance, talking about the actual act or occurrences, he clammed up, went into the corner of the room, put his head in between his legs, raised his legs up, put his arms up toward his head like this, curled up.

This evidence of Evan's reaction during his interview by Racansky and Love was not contradicted, although the plaintiffs point out that these observations were not included in Racansky's or Love's notes of their interview.

Given these circumstances, we cannot say that Racansky or Knox violated clearly established law when they took Evan into protective custody, and held him until the September 16th hearing.[4]

The Bakers argue that certain California statutes and San Mateo County guidelines put Racansky and Knox "on notice" that the Bakers' asserted rights were clearly established. They conclude that "on this basis as well, this Court should hold that plaintiffs' constitutional rights were clearly established in the factual setting which the defendants faced on September 11, 1986." The Bakers primarily rely on *Bilbrey v. Brown*, 738 F.2d 1462, 1466 (9th Cir.1984), and *White v. Pierce County*, 797 F.2d 812, 815–16 (9th Cir.1986).

*White* is unhelpful. In *White*, we did not decide whether the relevant state statute controlled or even affected the defendants' claim to qualified immunity. Instead, we merely noted the state statutory requirements satisfied the federal constitutional requirements. *Bilbrey* is distinguishable because the *Bilbrey* defendants had waived their right to argue that the legal standards were not clearly established. 738 F.2d at 1466 n. 6. Moreover, in a decision published shortly before *Bilbrey*, the Supreme Court held that: "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984).[5]

While a straightforward application of the principles announced in *Anderson* and its progeny supports the conclusion that

---

4. After the hearing, the court released Evan to his mother on condition that he receive a psychological evaluation and that there be no contact between Evan and his father.

5. The Court noted that violations of statutes or regulations are relevant only when "that statute or regulation provides the basis for the cause of action sued upon." *Id.* at 194 n. 12, 104 S.Ct. at 3019 n. 12.

**190**

both Racansky and Knox have qualified immunity, the Bakers argue that this case falls outside of *Anderson*'s general analytical framework. They argue that the district court held that the defendants' conduct was so egregious as to be clearly unlawful, and that such conduct provides a sufficient basis on which to deny the defendants' claim of qualified immunity. The district court grounded its holding on dicta in *Backlund v. Barnhart,* 778 F.2d 1386, 1390 (9th Cir.1985). In *Backlund,* a pre-*Anderson* case, we speculated that: "There may be cases of conduct so egregious that any reasonable person would have recognized a constitutional violation." *Id.* The Bakers argue this is such a case.

Assuming without deciding that our speculation in *Backlund* may have been correct, the present case is not one in which to announce an "egregious conduct" doctrine. Viewing the evidence in the light most favorable to the Bakers, and resolving all inferences in their favor, the circumstances which have been shown to exist in this case are not such that "any reasonable person" would have recognized that taking Evan into temporary custody without a hearing and holding him until the September 16th court hearing would violate the Bakers' rights under the Constitution or federal law.

The parties raise a number of other issues which do not merit separate treatment. We therefore decline to discuss them.

### CONCLUSION

We reverse the district court's order denying Racansky's and Knox's motion for summary judgment on the basis of qualified immunity. The socialworkers' alleged conduct did not violate clearly established law. They are entitled to qualified immunity.

REVERSED and REMANDED with instructions to dismiss the action.