67 F.3d 307
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Michael L. JENKS, Debra Jenks, individually and as Guardian
Ad Litem for Gene Donald Smith, a minor, Plaintiff-Appellant,
v.
Louise HULL, Diana Murdoch and Fran Clark, individually and
as Social workers of Contra Costa County Child Protective
Services; Child Protective SVC, Contra Costa County Child
Protective Services; James A. Rydingsword; City of
Concord, Concord Police Department; Perfecto Villarreal,
Officer; Larry Lee, Officer of the Concord Police Dept;
Contra Costa County, Defendants-Appellees.
 No. 94-15268.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 13, 1995.
Decided Sept. 28, 1995.
 
 Before: CHOY, BEEZER, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Michael and Debra Jenks (collectively the "Jenkses"), individually and as guardians ad litem for their minor son, Gene Donald Smith ("Donny"), appeal the district court's summary judgment orders, dated April 7, 1993 and November 10, 1993, in favor of the Concord Police Department ("CPD"), Contra Costa County Child Protective Services ("CPS"), and individual police officers and social workers (collectively, the "Defendants") in their 42 U.S.C. Sec. 1983 action. The Jenkses allege that the Defendants violated their constitutional rights to due process and family integrity under the First, Fourth, Ninth, and Fourteenth Amendments by taking Donny into temporary protective custody on the basis of suspected child abuse without a pre-deprivation hearing.
 
 
 3
 The district court granted summary judgment for the individual defendants on all claims on the basis of qualified immunity. The district court also granted summary judgment for the municipal defendants, CPD and CPS, on all of Jenkses' theories of relief except one.[1] The surviving claim, that the policies or customs of CPD and CPS violated the Jenkses' procedural due process rights, was dismissed by a second summary judgment order entered on November 10, 1993. We affirm.
 
 
 4
 * Qualified Immunity of Individual Defendants
 
 
 5
 The Jenkses contend that the district court erred by holding that the individual defendants were entitled to qualified immunity from Sec. 1983 liability because the Jenkses failed to show that the contours of their constitutional right to family integrity were clearly established at the time of the alleged violation.
 
 
 6
 The doctrine of qualified immunity is intended to provide government officials with a reasonable expectation of when their conduct may give rise to damages. Anderson v. Creighton, 483 U.S. 635, 646 (1987). "Government officials performing discretionary functions enjoy qualified immunity from civil damages so long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1314 (9th Cir.1989) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).
 
 
 7
 To determine whether a right is clearly established, the Supreme Court directs us to examine the specific contours of the constitutional right, not at the general but at the more specific level:
 
 
 8
 The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
 
 
 9
 Anderson, 483 U.S. at 640 (citations omitted).
 
 
 10
 Parents have a constitutionally protected liberty interest in the care and custody of their children. See Santosky v. Kramer, 455 U.S. 745, 753 (1982); see also Caldwell v. Le Faver, 928 F.2d 331, 333 (9th Cir.1991). The parental liberty interest in keeping the family intact, however, is not absolute if there exists a reasonable suspicion of parental physical abuse. Baker v. Rancansky, 887 F.2d 183, 187 (9th Cir.1989) (quoting Myers v. Morris, 810 F.2d 1437 (8th Cir.), cert. denied, 484 U.S. 828 (1987)). "In an emergency situation, a state agency may remove children from their parents' custody when the children are subject to immediate or apparent danger or harm." Caldwell, 928 F.2d at 333.
 
 
 11
 We must take into consideration the law existing in 1991, defining emergency situations that justify taking a child into temporary custody, in order to determine whether a reasonable government official could have believed that taking Donny into temporary protective custody under the circumstances did not violate the Jenkses' constitutional right to family integrity. See Baker, 887 F.2d at 187.
 
 
 12
 In 1987, the Second Circuit defined an emergency situation as a situation in which government officials are presented with evidence of serious child abuse and in which the officials have reason to fear imminent recurrence. Robinson v. Via, 821 F.2d 913, 922 (2nd Cir.1987). As we pointed out, "Robinson, however, did not decide the question of what kind of situation justifies emergency protective custody without a pre-deprivation hearing, and more important, what does not." Baker, 887 F.2d at 188. The Eighth Circuit has found that where the existence of a right is subject to a balancing test, as it is here, that right cannot be clearly established absent a "closely corresponding factual and legal precedent." Myers, 810 F.2d at 1462. The Jenkses have failed to present a case existing in 1991 that clarified the type of situation that constituted an emergency justifying temporary custody and that could have guided the government officials in their actions.
 
 
 13
 Fran Clark, a social worker with CPS, and Officer Larry Lee, a CPD officer, were informed first by Vice Principal Kathleen Jacobson at Donny's school that in response to questions about his bruise, Donny stated that his stepfather had hit him with a belt "as hard as he could" on September 10, 1991 for bringing home a red card evidencing misbehavior at school. Clark and Lee were further apprised of the fact that Donny claimed to have been spanked again for showing his teacher his bruise. When Lee and Clark questioned Donny, he gave conflicting accounts of his punishment for bringing home a red card. Jacobson then asked Donny, in Lee and Clark's presence, whether his parents told him not to show his bruise to anyone. Donny "shook" his head, which Lee, Clark, and Jacobson interpreted as an affirmative response. Finally, Clark examined Donny's bruise and concluded that his bruise appeared to be consistent with his description of the spankings. Her suspicions were triggered further by her examination of a psychological study done on Donny on February 14, 1991, in which Donny was noted "to be a very angry and unhappy child."
 
 
 14
 On the basis of Donny's statements, an examination of his bruise, Donny's psychological evaluation, the implied threat of reprisal if Donny told anyone about his bruise, and their collective experience and training, Clark and Lee concluded that Donny should be taken into temporary custody. We find that Clark and Lee's decision was not unreasonable in light of the circumstances and the existing law in 1991 governing emergency situations. Where there is a " 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." Wiley v. Doory, 14 F.3d 993, 995 (4th Cir.1994), petition for cert. filed, 64 U.S.L.W. 3017 (U.S. June 1, 1995) (No. 94-2138).
 
 
 15
 The Jenkses assert two arguments to support their contention that the district court erred in granting summary judgment. First, they argue that the district court is not authorized to make a finding as to whether the seizure of Donny was reasonable under the circumstances. The Jenkses cite to Ting v. United States, 927 F.2d 1504, 1511 (9th Cir.1991), in support of their contention that the reasonableness of a seizure is a matter reserved for the trier of fact where there is conflicting evidence. Ting does not stand for such a proposition but rather stands for the proposition that the question of the reasonableness of the force used in an arrest is for the jury. Id. at 1510. The Jenkses' argument is misplaced because Donny was not forcibly seized nor was he arrested. The district court's decision to grant summary judgment was based on the Jenkses' failure to demonstrate that the individual defendants had violated a clearly established right; the district court never decided the issue of whether excessive force was used in arresting Donny.
 
 
 16
 Second, the Jenkses argue that the district court improperly considered the temporary nature of the custody to rule that an already clearly established right to freedom of choice in family life became less clearly established because the custody was only temporary. The Jenkses again misinterpret the district court's ruling. The district court considered the temporary nature of the custody in order to determine whether the right was clearly established in the first place.
 
 
 17
 Because the law in 1991 did not establish sufficiently the type of situation that constitutes an emergency in order to justify temporary custody, we affirm the district court's holding that qualified immunity applies. However, even if we assume that the loose guidance provided by the courts in 1991 formed a clearly established right, we hold that Lee and Clark did not violate that right under the circumstances.
 
 
 18
 Lee and Clark were not acting from mere subjective suspicion. See In re Juvenile Appeal (83-CD), 455 A.2d 1313, 1321 (Conn.1983) (holding that temporary custody is not warranted where there is only subjective suspicion of child abuse and no evidence of immediate risk of danger to the children). Rather, Lee and Clark were acting on the basis of objective indications of physical abuse, which at that time constituted an emergency situation warranting temporary custody. See, e.g., Donald v. Polk County, 836 F.2d 376, 378, 381 (7th Cir.1988) (holding that observation of lesions on the child's back and the child's four or five different explanations for the injuries presented an emergency to justify temporary custody); Doe v. Hennepin County, 858 F.2d 1325, 1328-29 (8th Cir.1988) (finding no violation of due process where government officials asserted temporary custody of plaintiffs' children on the basis of alleged sexual abuse and holding that defendant government officials were entitled to qualified immunity even though the allegations later were proven false), cert. denied, 490 U.S. 1108 (1989). Had Lee and Clark failed to investigate further Donny's situation after they were presented with Donny's statements and evidence tending to show physical abuse, they could have subjected themselves, as well as the city and county, to liability. See Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1125 (9th Cir.1989).
 
 
 19
 Because we affirm the district court's decision, granting all individual defendants qualified immunity from the Jenkses' Sec. 1983 claim, we do not address whether the individual defendants are entitled to absolute immunity.
 
 II
 Due Process Violation by CPS Employees
 
 20
 The Jenkses next challenge the trial court's grant of summary judgment on their claim that the post-removal conduct by CPS employees violated their right to due process. The Jenkses allege that CPS employees used intimidating and harassing tactics in order to solicit an admission of child abuse from them.
 
 
 21
 First, the Jenkses assert that Louise Hull, Donny's case worker with CPS, deprived them of due process by attempting to eliminate the need for a contested hearing through threats of criminal prosecution against Michael Jenks. The Jenkses fail to establish how Hull's threat of criminal prosecution, even if true, would implicate a constitutional right. The Jenkses cite to Harrison v. Springdale Water and Sewer Comm'n, 780 F.2d 1422, 1427 (8th Cir.1986), and Thomas v. Collins, 323 U.S. 516, 530 (1945), in order to support their claim that such a threat denied them access to the courts and to due process.
 
 
 22
 Harrison involved a Sec. 1983 claim against the city and the sewer commission for filing a frivolous condemnation suit to force the plaintiff-landowners to settle a damage claim against the commission. Harrison, 780 F.2d at 1425. The Eighth Circuit reversed the district court's dismissal of the complaint, holding that the plaintiffs had stated a Sec. 1983 cause of action for infringement of their First Amendment right of access to the courts. Id. at 1427. The Eighth Circuit stated that "[a]n individual's constitutional right of access to the courts 'cannot be impaired, either directly ... or indirectly, by threatening or harassing an [individual] in retaliation for filing a law suit[,]' " id. at 1427-28 (emphasis added), and further, that the right to petition has "a sanctity and a sanction not permitting dubious intrusions." Id. at 1427 (quoting Thomas, 323 U.S. at 530).
 
 
 23
 The Harrison case is not applicable here. The only lawsuit that the Jenkses filed was based upon Sec. 1983, and the Jenkses have presented no evidence that CPS workers attempted to threaten or harass the Jenkses in retaliation for filing their Sec. 1983 suit.
 
 
 24
 The Jenkses next contend that Hull's offer to return Donny immediately if Michael Jenks moved out of the home unjustifiably intrudes upon the Jenkses' right to family integrity. As we have previously stated, the right to family integrity is not absolute and must give way to countervailing considerations, such as Donny's right to be free from physical abuse.
 
 
 25
 Finally, the Jenkses assert that they were subjected to prosecution without a reasonable basis. This argument is misplaced because there is no indication that any criminal charges were filed against them, as the district court recognized. Jenks v. Hull, No. C-92-3747 EFL at 9 (N.D.Cal. Apr. 7, 1993) (order granting partial summary judgment).
 
 
 26
 We find that the Jenkses' claims against CPS employees for their post-removal conduct are without merit and affirm the district court's grant of summary judgment.
 
 III
 Liability of Municipal Defendants
 
 27
 Finally, the Jenkses contend that the district court erred in concluding that the municipal defendants, CPD and CPS, were not liable under Sec. 1983 pursuant to the principles enunciated in Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978) (holding that municipal liability under Sec. 1983 can be imposed only for injuries inflicted pursuant to a government policy or custom). In order to establish a Sec. 1983 claim against the municipal defendants, the Jenkses initially must assert that the municipal employees deprived them of a federal constitutional or statutory right. See 42 U.S.C. Sec. 1983. The first inquiry in any Sec. 1983 suit is "to isolate the precise constitutional violation with which [the defendant] is charged." Baker v. McCollan, 443 U.S. 137, 140 (1979). If the Jenkses cannot assert a violation of the Federal Constitution or laws, they cannot challenge the qualified immunity defense. Clark v. Link, 855 F.2d 156, 163 (4th Cir.1988).
 
 
 28
 Despite the district court's summary judgment order clarifying the elements necessary to assert a Sec. 1983 claim against the municipal defendants, the Jenkses failed to establish a constitutional right which was violated allegedly by CPS and CPD through its policies and customs. The Jenkses' attempt to establish the violation of their constitutional right to family integrity as the basis of Sec. 1983 municipal liability is unsuccessful. We have concluded above that the Jenkses' constitutional interest in familial integrity was not violated by the state's temporary custody of Donny because the right to familial integrity is not absolute and must be balanced against Donny's right to be free from physical abuse.
 
 
 29
 The Jenkses do not allege explicitly that any other constitutional right was violated. The district court found that the Jenkses could have asserted that their right to due process was violated, although the district court was unsure as to whether "[the Jenkses] claim additional process is constitutionally required or whether [the Jenkses] claim that they were not given the process provided by the California statutes." Jenks v. Hull, No. C-92-3747 EFL at 9 (N.D.Cal. Nov. 10, 1993) (order granting partial summary judgment).
 
 
 30
 We consider each of these possibilities to determine if the Jenkses have asserted a constitutional violation. First, the district court did not err when it found that no additional process was required other than that already provided by California statutes. Although there is a right to post-deprivation hearings in certain situations, see Caldwell, 928 F.2d at 334, no pre-deprivation hearing is required constitutionally for temporary removal of a child if there is a perceived emergency, see Robinson, 821 F.2d at 921.
 
 
 31
 Second, the Jenkses cannot assert a Sec. 1983 claim by merely alleging that Lee and Clark failed to follow California statutory procedures. Even if CPS and CPD violated state law, mere violations of state law do not constitute a violation of due process and do not provide the basis for a Sec. 1983 claim. See Gryger v. Burke, 334 U.S. 728, 731 (1948) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."); see also Weller v. Department of Social Servs., 901 F.2d 387, 392 (4th Cir.1990) (stating that violations of state law cannot provide a basis for a due process claim).
 
 
 32
 A Sec. 1983 claim may be asserted, however, if state law violations rise to the level of a denial of federal constitutional rights. Barclay v. Florida, 463 U.S. 939, 957-58 (1983). Accordingly, the district court examined whether the customs and policies of CPS and CPD violated the Jenkses' right to substantive due process. The Due Process Clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them...." Daniels v. Williams, 474 U.S. 327, 331 (1986). The Supreme Court has not articulated specific standards for what constitutes a substantive due process violation but has defined such a violation as conduct which "shocks the conscience." Rochin v. California, 342 U.S. 165, 172 (1952), overruled, but not in relevant part, as stated in, Lester v. City of Chicago, 830 F.2d 706, 710-11 (7th Cir.1987). An assertion of government power, accompanied by a disregard for the plaintiff's physical safety which amounts to "deliberate indifference," is sufficient to state a Sec. 1983 claim. Wood v. Ostrander, 879 F.2d 583, 588 (9th Cir.1989), cert. denied, 498 U.S. 938 (1990).
 
 
 33
 Actions which we found "shock the conscience" have arisen frequently in the context of alleged police brutality. For example, we allowed a Sec. 1983 claim on the basis of a substantive due process violation where a plaintiff alleged that police officers beat him without provocation and without arresting him. Rutherford v. City of Berkeley, 780 F.2d 1444, 1447-48 (9th Cir.1986). We also found Sec. 1983 liability appropriate when a plaintiff proved that the police stranded her in a dangerous neighborhood at night where she was subsequently raped. Wood, 879 F.2d at 596.
 
 
 34
 In Weller, the Fourth Circuit held that there was no substantive due process violation where government officials transferred the custody of the plaintiff's son without a hearing. Weller, 901 F.2d at 391. The Fourth Circuit stated, "It does not shock the conscience to hear that defendants removed a child in emergency action from the custody of a parent suspected of abusing him, based upon some evidence of child abuse." Id. at 391. Weller had admitted striking his child with a belt but denied abusing him. Id. at 391 n. 7. We agree with the district court that the alleged conduct of CPS employees did not rise to the level of a substantive due process violation.
 
 
 35
 Because the Jenkses failed to establish a constitutional violation by the municipal employees, their Sec. 1983 claim against the municipal defendants fails. We affirm the district court's decision to grant summary judgment in favor of the municipal defendants.
 
 IV
 Attorney's Fees
 
 36
 We decline to award attorney's fees to the defendants on this appeal. We have held that a prevailing defendant should not routinely be awarded attorney's fees under Sec. 1988, but rather only where the plaintiff's action is unreasonable, frivolous, or meritless. Vernon v. City of Los Angeles, 27 F.3d 1385, 1402 (9th Cir.), cert. denied, 115 S.Ct. 510 (1994). Although many of the Jenkses' allegations were not well-supported, the Jenkses managed to assert claims which had some foundation.
 
 V
 Conclusion
 
 37
 We AFFIRM the district court's summary judgment dismissal of the Jenkses' Sec. 1983 claim against the individual defendants, Louise Hall, Diana Murdoch, Fran Clark, James A. Rydingsword, Perfect Villarreal, and Larry Lee, on the ground of qualified immunity because the contours of the constitutional right to family integrity were not clearly established at the time of the alleged violation.
 
 
 38
 We also AFFIRM the dismissal of the Jenkses' Sec. 1983 claim against the municipal defendants, CPS and CPD, on the ground that the Jenkses failed to state a constitutional violation.
 
 
 39
 AFFIRMED.
 
 BEEZER, Circuit Judge, concurring in part:
 
 40
 I concur in the conclusion reached by the court insofar as it affirms the district court's grant of summary judgment in favor of the individual and municipal defendants. The individual defendants were entitled to qualified immunity. See Anderson v. Creighton, 483 U.S. 635 (1987). As for the claims against the municipal defendants, it appears that the plaintiffs failed to establish a material fact as to the existence of a practice or custom. See Monell v. Department of Social Servs., 436 U.S. 658 (1978). I would affirm on these bases and I would not reach the issues of whether the constitutional rights to family integrity and due process were violated.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Technically, there were two remaining claims at that point, however, the Sec. 1983 retaliation claim against CPS, which had been added by the Second Amended Complaint, was dismissed pursuant to a stipulation by the parties on January 14, 1994