Scott A. **FALKIEWICZ,** Brittany Y. **Falkiewicz** Plaintiffs,

v.

**CITY OF WESTLAND,** Emery Price, **Michael Terry, Laura Moore, Officer Percin,** Defendants.

No. 97–CV–73655–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 26, 1998.

---

Scott A. Falkiewicz, Jackson, MI, pro se.

Michael J. Watza, Christina Gill Roseman, Detroit, MI, for defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND DISMISSING PLAINTIFFS' STATE LAW CLAIMS WITHOUT PREJUDICE

DUGGAN, District Judge.

### Opinion

This matter is currently before the Court on the parties' cross motions for summary judgment. The Court, pursuant to 28 U.S.C. § 636(b)(1)(B), referred these matters to Magistrate Judge Steven Pepe for Report and Recommendation ("R & R"). On August 31, 1998, Magistrate Judge Pepe recommended granting defendants' motion for summary judgment based on defendants' affirmative defense of qualified immunity, and denying plaintiffs' motion for summary judgment. Plaintiff [1] filed objections to the R & R on September 16, 1998 to which defendants filed a response on September 24, 1998. Having received objections to the R & R from plaintiff, the Court undertakes a *de novo* review of those portions of the R & R to which plaintiff has filed an objection. 28 U.S.C. § 636(b)(1)(C); *Smith v. Detroit Fed'n of Teachers,* 829 F.2d 1370, 1373 (6th Cir.1987).

### Background

Plaintiff Scott Falkiewicz, currently incarcerated at the Cotton Correctional Facility in Jackson, Michigan, filed the present action pursuant to 42 U.S.C. § 1983 claiming that defendants violated his constitutional rights by removing his child from his home, without a warrant, based on allegations that plaintiff sexually abused his stepdaughter and his niece in his home and place of employment. Plaintiff asserts, on behalf of himself and

---

1. The Court shall adopt the designation plaintiff to refer to plaintiff Scott Falkiewicz. The Court refers to plaintiff Brittany Falkiewicz as "plaintiff Brittany."

plaintiff Brittany[2], the following violations of federal and state law: 1) Fourth Amendment right to be secure in one's home and person; 2) Fourteenth Amendment rights of due process and equal protection; 3) First Amendment right of association as applied to the states via the Fourteenth Amendment; and 4) state law assault and battery. Plaintiff is seeking both a declaratory judgment and money damages.

The facts relevant to a disposition of this matter are as follows. On April 4, 1994, the Westland Police Department received a call from Protective Services that ten-year-old Christin Skelly reported to them that she had been sexually assaulted by her uncle, plaintiff Scott Falkiewicz. Defendants Terry and Moore, Westland police officers, interviewed Christin Skelly on April 7, 1994 at which time Christin claimed that plaintiff sexually abused her and his stepdaughter, twelve-year-old Heather Lulow. The substance of Christin Skelly's allegations against the plaintiff are as follows: 1) plaintiff Scott abused the girls every time Christin visited plaintiff's home between August 1993 and January 1994; 2) plaintiff abused the girls at a doctor's office which plaintiff Scott cleaned every Sunday; 3) plaintiff abused the girls while plaintiff Brittany was sleeping in a bassinet located on the same bed; and 4) plaintiff walked around naked in his home in front of his wife and children. In light of the aforementioned allegations, defendants Terry and Moore decided to remove the Falkiewicz children from the home.

Approximately ninety minutes following the April 7, 1994 interview with Christin Skelly, defendants Terry and Moore, along with defendant Percin and Officer Mathews,[3] drove to the Falkiewicz residence to remove the children. Plaintiff's then wife, Nina Falkiewicz, initially resisted the officers' attempt to remove the children from the home and stated that she disbelieved the allegations against her husband. Ultimately, Nina Falkiewicz turned over Eric Lulow, plaintiff's stepson, and plaintiff Brittany to the officers. Officer Percin located Heather Lulow at a neighbor's home and she was taken into custody. A hearing was held within twenty-four hours of the removal of the children from the home. Plaintiff Scott was convicted of two counts of criminal sexual conduct in the second degree with children under the age of thirteen for the incidents involving Christin Skelly and Heather Lulow.

Plaintiff Scott contends that his constitutional rights were violated when defendants removed plaintiff Brittany from his home without a warrant or prior court order. Plaintiff claims that the nature of the information on which defendants relied did not constitute exigent circumstances or probable cause sufficient to support a warrantless entry into his home to temporarily deprive him of custody of his child. Defendants reply that the situation, with which they were confronted, necessitated the temporary removal of plaintiff Brittany from the home without a court order. Defendants claim that they are entitled to qualified immunity because they did not violate any clearly established rights.[4]

### Standard of Review

#### Qualified Immunity

■ Defendants rely upon the doctrine of qualified immunity to defeat plaintiff's claims. Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The question of whether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial." *Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir.1988).

---

**2.** Plaintiff Brittany refers to Brittany Falkiewicz, the infant daughter of plaintiff Scott Falkiewicz.

**3.** Officer Mathews is not a named defendant in this action.

**4.** The magistrate judge notes in the R & R that he did not address the alternative bases on which the defendants moved for summary judgment because the scope of discovery was narrowed to "only issues involving defendants' claim of qualified immunity...." (R & R at 5).

In order to determine whether an official is entitled to qualified immunity, a court must first consider, "whether, based on the applicable law, a constitutional violation occurred." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir.1996) (citing *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589 (6th Cir.1994)). If the court finds a constitutional violation, the inquiry proceeds to an examination of whether it involved " 'clearly established constitutional rights of which a reasonable person would have known.' " *Id.* at 1158 (quoting *Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir.1995)). Once the court determines whether a constitutional right was clearly established, the analysis then focuses on "whether the plaintiff has alleged sufficient facts to indicate what [the officer] allegedly did was objectively unreasonable in light of [the] clearly established constitutional rights." *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir.1994). Stated differently, in order to defeat a claim of qualified immunity, a plaintiff must show that the "official knew or reasonably should have known that the action he [or she] took within his [or her] sphere of official responsibility would violate the constitutional rights of the [plaintiff] . . . ." *Harlow*, 457 U.S. at 816, 102 S.Ct. 2727. The Court will apply the aforementioned standards to the facts of the instant case.

### Analysis

Magistrate Judge Pepe states that the salient issue dispositive of all three of plaintiff's constitutional claims is:

> whether defendants Terry, Moore, and Percin had sufficient exigent circumstances to enter the home and take Brittany and, if not, was it clearly established on April 7, 1994, on the facts known to them that they could not so act without first getting a warrant or other court order.

(R & R at 12). On the issue of whether defendants' entry into the Falkiewicz home without a warrant resulted in a violation of the constitutional rights of plaintiff, the magistrate judge determined that a genuine issue of fact existed over whether the facts, with which defendants were confronted, constituted exigent circumstances sufficient to permit defendants' entry into the Falkiewicz home. However, the magistrate judge subsequently concluded that defendants were entitled to qualified immunity on the grounds that although "the circumstances involved in this case did not involve sufficient imminent danger to Brittany to dispense with a need for court review prior to removing her from her home, that legal standard on facts similar to these was not clearly established in 1994." (R & R at 22). Thus, the magistrate judge recommended the entry of summary judgment on qualified immunity in favor of defendants.

Plaintiff objects to the magistrate judge's determination that the law was not clearly established in 1994 with respect to the issue of whether defendants, when faced with the circumstances which they confronted, would know that a court order was constitutionally required before removing the child from the home. Plaintiff states, "in determining whether Plaintiffs' rights were sufficiently well established prior to April 1994, this Court must review case laws in which children were seized from inside the home, where there is more closely corresponding factual and legal precedents." (Pl.'s Obj. at 2). Defendants respond by claiming the conduct at issue in the present case did not violate any existing constitutional or statutory right. Defendants assert "[a] parent does not have a constitutionally protected liberty interest in the custody of a child which cannot be interfered without due process." In support, defendants cite the Second Circuit's opinion in *Robison v. Via*, 821 F.2d 913 (2d Cir.1987) in which the court noted: "[I]t was, and remains, equally well-established that officials may temporarily deprive a parent of custody in 'emergency circumstances' without parental consent or a prior court order." *Id.* at 921.

The initial inquiry in any qualified immunity analysis involves a determination of whether a constitutional violation has occurred. *See Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir.1994). Considerable disagreement exists among the parties at this juncture on whether the officers' entry into the Falkiewicz home to remove plaintiff Brittany without a warrant violated plaintiff's consti-

tutional rights. On the issue of whether a constitutional violation occurred, the magistrate judge determined that a genuine issue of material fact existed as to whether there were exigent circumstances which would have excused the necessity for the officers to obtain a warrant. Even if an issue of fact exists as to whether or not the officers' conduct resulted in a constitutional violation, this does not preclude the availability of the defense of qualified immunity.[5] The issue to be resolved in deciding whether or not the defendants are entitled to qualified immunity, is whether or not a reasonable police officer in 1994, on facts similar to those confronted by defendants, would have known that removing Brittany from plaintiff's home without a warrant violated clearly established statutory or constitutional rights.

In determining whether a constitutional right is clearly established at the time of the incident in question, a court must "look first to the decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Buckner*, 36 F.3d at 539 (citation omitted). The standard on which a defendant's entitlement to qualified immunity is assessed "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The Supreme Court, in *Anderson, supra*, described the nature of a "clearly established right" as follows:

> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that

an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. Thus, in order for plaintiff to succeed on a § 1983 claim, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo*, 953 F.2d at 1042. The Court does not believe that under the circumstances confronting defendants the "contours" of the right not to remove plaintiff Brittany, without an attempt to obtain a court order, were· "clearly established" at the time defendants effected the removal of the child.

In the R & R, the magistrate judge notes, and the parties are in agreement, that "there was no clear Supreme Court or Sixth Circuit case law available on April 7, 1994, involving facts generally similar to those involved in the present case." (R & R at 20). In addition, the magistrate judge states "[n]o circuit or other cases on similar facts ruled that a social worker or the police could not undertake a temporary removal in child abuse cases without first obtaining court approval." *Id.*

Moreover, the Court notes that several Courts of Appeal have sanctioned the temporary removal of children in child abuse cases on facts similar to those confronted by defendants in the instant case. In *Baker v. Racansky*, 887 F.2d 183 (9th Cir.1989), the Ninth Circuit confronted a factual scenario in which the San Mateo Police Department received a report from an individual that she believed that her two children had been sexually abused by a neighbor, Paul Baker. The police department referred the case to a social worker who interviewed the children and then referred her findings back to the police department. Officers of the San Ma-

---

**5.** Of course, if the Court concluded as a matter of law that exigent circumstances did exist justifying the police officers' actions, then there would be no constitutional violation and there would be no need to address the issue of qualified immunity. *See Siegert v. Gilley*, 500 U.S. 226, 231–33, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991);

*Purisch v. Tennessee Technological Univ.*, 76 F.3d 1414, 1423 (6th Cir.1996) ("Only if we find a constitutional violation do we examine whether it involved "clearly" established constitutional rights of which a reasonable person would have known.") (quoting *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir.1995)).

teo Police Department then interviewed Mr. Baker's child, Evan, at his school. During the interview, the child denied being a victim of abuse by his father, but the officers felt the child's reactions suggested otherwise. The officers then took the child into custody that same day and arrested Mr. Baker. The plaintiffs argued that in the context of the Fourth Amendment, the police could not deprive the parents of custody, even temporarily, without a warrant absent probable cause and exigent circumstances. The defendant officers moved for qualified immunity. The Ninth Circuit formulated the qualified immunity inquiry in the following fashion:

> Under *Anderson*, the relevant question in the present case is whether a reasonable [official] could have believed that taking Evan and holding him in temporary protective custody was lawful "in light of clearly established law and the information" the [officials'] possessed.

*Baker*, 887 F.2d at 187 (citation omitted). In arriving at that formulation, the court explicitly rejected what it characterized as plaintiffs' broad formulation of the right as a general right to be free from warrantless searches of one's home unless the officers have probable cause or exigent circumstances. Instead, the court noted "[t]he present case involves the difficult balancing of a family's right to autonomy against the state's interest in protecting minor children from abuse." The court then cited approvingly the Eighth Circuit's decision in *Myers v. Morris*, 810 F.2d 1437 (8th Cir.1987), in which the Eighth Circuit noted:

> [I]f the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered "clearly established" at least in the absence of closely corresponding factual and legal precedent.

887 F.2d at 187. Ultimately, the Ninth Circuit in *Baker* concluded,

> the circumstances which have been shown to exist in this case are not such that any reasonable person would have recognized

that taking [the child] into temporary custody without a hearing and holding him until the September 16th court hearing would violate the Bakers' rights under the Constitution or federal law.

*Id.* at 190.

As noted by the Ninth Circuit in *Baker*, the Eighth Circuit in *Myers v. Morris, supra*, reached a similar conclusion that defendant officers were entitled to qualified immunity on facts similar to those in *Baker* and the instant case. In addition, the Court notes that the Fifth Circuit granted qualified immunity to state officials who removed two children in the face of allegations of abuse against the father.[6] *Hodorowski v. Ray*, 844 F.2d 1210 (5th Cir.1988). The Fifth Circuit, in reversing the district court's denial of a grant of qualified immunity to the defendants, stated:

> Though the children did not appear to need emergency medical treatment, the workers could not be sure when the father would return and perhaps threaten the children again. In these circumstances, we think appellants' actions in temporarily removing the children from the home were objectively reasonable and as a matter of law violated no clearly established right.

*Id.* at 1217.

In light of the foregoing decisions of the Fifth, Eighth, and Ninth Circuits, the Court believes that defendants are entitled to qualified immunity on all of plaintiff's claims.

> The qualified immunity standard gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued.

*Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991).

The facts, with which the officials were confronted, included allegations of abuse against a niece and the plaintiff's own step-

---

6. Specifically, the officials in *Hodorowski* received an anonymous tip that plaintiff was chasing his two daughters with a chain. The investigators visited the home and observed bruises on the body of one of the children. The officials then removed the children in the face of their acknowledgment that the children did not face an immediate risk of danger.

daughter. According to the accounts provided by the children, the abuse was ongoing and occurred not only at plaintiff's home, but at his place of employment as well. Based on the information these defendants possessed, in this Court's opinion, it was not unreasonable for them to believe that the circumstances justified removal of plaintiff Brittany.

■ In addition, the Court believes that the immediacy of the situation confronting plaintiff Brittany, as an infant, particularly justified defendants' conduct. Infants, who lack the ability to communicate child abuse or defend in any manner against it, are particularly vulnerable and rely upon the actions of officials to protect them. Defendants, in the instant case, were aware of allegations that plaintiff carried out the abuse of the other children in the same room with plaintiff Brittany present. Further, defendants were informed that plaintiff already engaged in the abuse of his stepdaughter and the Court does not believe it was unreasonable for the defendants to be concerned that he might engage in similar conduct with his infant daughter. Even if the officers were "mistaken" in their judgment that these circumstances necessitated the immediate removal of Brittany, such error was a "reasonable error" and the Court is satisfied that a reasonable officer could have believed his conduct to be lawful in light of clearly established law and the information that defendants possessed. Defendants are therefore entitled to summary judgment on the basis of qualified immunity.

In his objections, plaintiff states that in making the determination of whether the law was clearly established, "this Court must review case laws in which children were seized from inside the home...." (Pl.'s Obj. at 2). In support, plaintiff relies upon the Third Circuit's decision in *Good v. Dauphin*, 891 F.2d 1087 (3d Cir.1989) and the Second Circuit's decision in *Hurlman v. Rice*, 927 F.2d 74 (2d Cir.1991). The Court believes that both of the cases, on which plaintiff relies, are factually inapposite and do not support the proposition that an attempt to obtain a court order was constitutionally required prior to forcibly removing plaintiff Brittany.

The Court believes that plaintiff's reliance upon the Third Circuit's decision in *Good* is unavailing. In *Good*, two police officers, acting on anonymous information telephoned to a social services agency that the plaintiff child had bruises on her body which were allegedly caused by her mother, entered plaintiff's home and performed a "strip search" on the plaintiff child to ascertain the existence of child abuse. In concluding that the defendants were not entitled to the defense of qualified immunity, the Third Circuit stated:

> It is next necessary to consider whether, assuming Ms. Good did not consent, the searches were nonetheless justified by an emergency situation. On Ms. Good's version of the facts a trier of fact could properly conclude that the information available to Hooper and Sweigart could not have led a reasonable law enforcement officer to conclude that Jochebed was in immediate and grave peril when they approached the Good's residence. In fact, we do not understand Hooper and Sweigart to contend otherwise. A single anonymous report had indicated only that Jochebed, on a single occasion, "had bruises on her body" of unspecified severity. Moreover, Hooper and Sweigart saw and heard nothing in their conversation with Ms. Good at the open door that hinted in any way that Jochebed was being mistreated.

*Good,* 891 F.2d at 1095. Plainly, the information possessed by the officers in *Good* is significantly different than the information possessed by the officers in this case; thus, *Good* is clearly distinguishable.

In *Rice*, the defendant officers went to the plaintiffs' home and forcibly removed the plaintiff child under the auspices of a family court order that purportedly gave the officials the authority to remove the child. The defendants asserted the defense of qualified immunity, in part, contending that their conduct was reasonable on the grounds that plaintiffs' prior offense record gave the defendants the authority to enter the home and seize the child. The Second Circuit affirmed the district court's denial of qualified immunity in *Rice* because, "[h]ere, there are factu-

al questions, first, as to precisely what information any of the appellants had." 927 F.2d at 80. The Court specifically found that, "[t]here are questions of fact to be answered in order to determine whether appellants are entitled, on any of their theories, to a defense of qualified immunity...." *Id.* at 81. In this case, there is no significant dispute with respect to the facts upon which police officers relied in making their decision to remove the children from the home. *Rice* is therefore distinguishable.

In sum, the Court does not believe that plaintiff has satisfied his burden of establishing that, in April 1994, the defendant officers knew or reasonably should have known that their conduct in temporarily removing plaintiff's child from his home in the face of allegations of abuse violated clearly established constitutional rights of which a reasonable person would have known. The Court therefore concludes that plaintiff's objections are without merit and defendants are entitled to an entry of summary judgment on the grounds of qualified immunity.

### *State Law Claims*

■ Having dismissed the federal claims, this Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. Plaintiff's state law claims were brought into this Court under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367(a). In cases where an action was originally filed in federal court and pendent state law claims were included, the Sixth Circuit has repeatedly indicated that once the federal claims in an action have been dismissed prior to trial, it is generally proper for the district court to order the pendent state law claims dismissed without prejudice so that they may be pursued in an appropriate state forum. In sum, such state law claims should be "dismissed without prejudice once [a] plaintiff's federal jurisdictional claim[s] [have been] held to be inappropriate." *Whittington v. Milby,* 928 F.2d 188, 194 (6th Cir. 1991), *cert. denied,* 502 U.S. 883, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991) (quoting *Collard v. Kentucky Bd. of Nursing,* 896 F.2d 179, 184 (6th Cir.1990)). *See also Heussner v.*

*National Gypsum Co.,* 887 F.2d 672, 677 (6th Cir.1989).

The Court, therefore, shall dismiss the state law claims without prejudice.

### *Conclusion*

For the reasons stated herein, the Court grants defendants' motion for summary judgment on qualified immunity on all of plaintiffs' federal claims. The Court denies plaintiffs' motion for summary judgment. Finally, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims of assault and battery. Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment on plaintiffs federal claims is **GRANTED;**

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment is **DENIED;** and

**IT IS FURTHER ORDERED** that plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE.**